BASIL W. BARTLETT vs. BOARD OF APPEALS OF LAKEVILLE
& another.[1]

Plymouth. February 12, 1987. — March 18, 1987.

Present: GREANEY, C.J., GRANT, & PERRETTA, JJ.

Zoning, Nonconforming use or structure, By-law. Words, "Discontinued,"
"Abandoned."

The board of appeals of a town, in concluding that a nonconforming use
of a certain building had been extinguished, properly equated the lan-
guage "discontinued for a period of two years or longer," appearing in
the relevant portion of the town's zoning by-law, as amended in 1978,
with the language "not used for a period of two years or more," as used
in the cognate provision of G. L. c. 40A, § 6, third par., appearing in
St. 1975, c. 808, § 3. [666-670]

A judge did not err in concluding that a nonconforming use of two dwelling
units in a certain building had been extinguished through abandonment
by the building's prior owner, where the dwelling units had been unoc-
cupied for more than ten years and where, on the agreed statement of
facts the judge was entitled to infer that, despite the prior owner's
declining health, she might have rented the two units during part of the
ten-year period had she wished to do so. [670-671]

The owner of a building was precluded from contending on appeal that he
was entitled to reestablish a nonconforming use of the building after
that use had been extinguished by the operation of the applicable zoning
by-law, where the owner did not place before this court any by-law
provision on which he sought to rely. [672]

CIVIL ACTION commenced in the Superior Court Department
on October 2, 1984.

The case was heard by William H. Carey, J., on a statement
of agreed facts.

Daniel F. Murray for the plaintiff.

Thomas A. Maddigan, Town Counsel, for the defendants.

---

[1] The building inspector of the town.

GRANT, J. The plaintiff has appealed from a judgment of the Superior Court which, in effect, sustained a 1984 decision of the board of appeals of Lakeville by which the board refused to order the town's building inspector to issue a building permit to the plaintiff for use in connection with the renovation of three dwelling units in a building located in the residence zoning district of the town. The questions for decision are the proper construction (1) of the third paragraph of G. L. c. 40A, § 6, as appearing in St. 1975, c. 808, § 3, which provides that "[a] zoning ordinance or by-law may define and regulate nonconforming uses and structures abandoned or not used for a period of two years or more," and (2) of § V(a) of the Lakeville zoning by-law, as amended in 1978, which provides in pertinent part for the continuation of any nonconforming use of a building or land "provided such use has not been discontinued for a period of two years or longer."

The case was submitted to the Superior Court on a statement of agreed facts which may be summarized as follows. In 1959, at the time of the adoption of the first zoning by-law in Lakeville, the building in question contained three dwelling units, all of which were occupied. The by-law did not permit three-family dwelling units in the residence zoning district in which the property was placed. The property was protected by the nonconforming use provisions of the 1959 by-law, which were the same as the present provisions already quoted except that they concluded with words such as "one year or longer" rather than the present "two years or longer." In 1962 the property was acquired by a couple by the name of Ryan, who occupied one of the units and let the other two out to tenants until Mr. Ryan died, some time in 1973. Mrs. Ryan continued to live in the unit formerly occupied by herself and Mr. Ryan until the time of her death in 1983. The unit in which she lived has been unoccupied since her death. The other two units have been unoccupied "from and after approximately January 1, 1974." The statement of agreed facts also contains the following: "Mrs. Ryan's health steadily declined *for several years until her death.* Her ability to maintain and manage the house was substantially impaired because of declining health. Be-

cause of her declining health Mrs. Ryan was unable to rent the premises or to physically alter or eliminate the apartments" (emphasis supplied).

In 1984, the plaintiff, as the present owner of the property, applied to the building inspector of the town for a building permit for use in connection with the renovation of all three dwelling units. The zoning by-law still forbids three-family dwelling units unless they are protected by the nonconforming use provisions of the by-law, and the building inspector denied the application. The plaintiff appealed to the board of appeals under G. L. c. 40A, § 8, as appearing in St. 1975, c. 808, § 3. The board attributed to the words "discontinued for a period of two years or longer" in the amended by-law the same meaning as the words "not used for a period of two years or more" in the present G. L. c. 40A, § 6, and sustained the action of the building inspector.[2] That action prompted the plaintiff's appeal to the Superior Court under G. L. c. 40A, § 17, as amended through St. 1982, c. 533, § 1. As already noted, a judge of that court sustained the board's decision.

1. A careful review of the legislative history of the provisions of the third paragraph of the present G. L. c. 40A, § 6, leads to the conclusion that the board's construction of the amended by-law is correct. The first grant of legislative authority to cities and towns outside Boston to adopt zoning ordinances and by-laws is found in St. 1920, c. 601 ("An Act to authorize cities and towns to limit buildings according to their use or construction to specified districts"), § 7, which provided that "[t]his act shall not apply to . . . the existing use of any building, but it shall apply to any alteration of a building to provide for its use for a purpose, or in a manner, substantially

---

[2] A copy of the board's decision was attached to the complaint, as required by G. L. c. 40A, § 17, and that copy has been reproduced in the record appendix. Copies of other documents similarly attached have not been reproduced. The parties stipulated in writing that "[n]o exhibits attached to the complaint shall be evidence in the case." We think it clear from counsel's response to the judge's opening inquiry as to the meaning of the stipulation that there was no intention of blinding the court to the contents of the very decision which was to be scrutinized under § 17.

different from the use to which it was put before the alteration."[3] That language found its way into G. L. c. 40, § 29 (1921), without any change of substance. With the slight changes effected by St. 1925, c. 116, § 3, the language was carried to G. L. (Ter. Ed.) c. 40, § 29. The zoning enabling legislation was extensively rewritten by St. 1933, c. 269 ("An Act revising the municipal zoning laws), § 1. The subject of nonconforming uses resurfaced in a new G. L. c. 40, § 26,[4] the second sentence of which provided that "[s]uch an ordinance or by-law may regulate non-use of non-conforming buildings and structures so as not to unduly prolong the life of non-conforming uses."[5] In that language is found the first legislative grant of authority to cities and towns outside Boston to extinguish nonconforming uses. The quoted language persisted until the effective date of the present G. L. c. 40A, § 6.[6] See St. 1952, c. 438; G. L. c. 40A, § 5, as appearing in St. 1954, c. 368, § 2; St. 1962, c. 340; St. 1969, c. 572.

It became the fashion for cities and towns, acting under the foregoing authorization, to adopt ordinances and by-laws directed to the extinguishment of nonconforming uses which spoke in terms of "discontinuing" such a use for a stated period. In the first case involving such an ordinance to reach the Supreme Judicial Court it was concluded, after a review of authorities in other jurisdictions, that "discontinued" should be considered the equivalent of "abandoned." *Pioneer Insulation & Modernizing Corp.* v. *Lynn,* 331 Mass. 560, 565 (1954).

---

[3] See *Inspector of Buildings of Burlington* v. *Murphy,* 320 Mass. 207, 209 (1946).

[4] See *LaMontagne* v. *Kenney,* 288 Mass. 363, 368 (1934).

[5] See *Planning Bd. of Reading* v. *Board of Appeals of Reading,* 333 Mass. 657, 658-659 (1956).

[6] Unless sooner accepted by a particular city or town, the provisions of G. L. c. 40A, as appearing in St. 1975, c. 808, § 3, and as amended (in respects not here material) by certain of the provisions of St. 1977, c. 829, took effect in every city and town except Boston (as to which see *Emerson College* v. *Boston,* 393 Mass. 303, 306-309 [1984]) on July 1, 1978. See *Casasanta* v. *Zoning Bd. of Appeals of Milford,* 377 Mass. 67, 72-73 (1979); *Shalbey* v. *Board of Appeal of Norwood,* 6 Mass. App. Ct. 521, 526-527 (1978).

The court said: "Hence it uniformly has been stated — and rightly we think — that the discontinuance of a nonconforming use results from the concurrence of two factors, (1) the intent to abandon and (2) voluntary conduct, whether affirmative or negative, which carries the implication of abandonment. Thus nonoccupancy of the premises and suspension or cessation of business due to causes over which the owner has no control do not of themselves constitute a discontinuance; and lapse of time is not the controlling factor, although it is evidential, especially in connection with facts showing an intent to discontinue the use." *Id.* The equivalence of "discontinued" and "abandoned" has been perpetuated. See, e.g., *Dobbs* v. *Board of Appeals of Northampton,* 339 Mass. 684, 685, 686 (1959); *Medford* v. *Marinucci Bros. & Co.,* 344 Mass. 50, 60 & n.1 (1962); *Cape Resort Hotels, Inc.* v. *Alcoholic Licensing Bd. of Falmouth,* 385 Mass. 205, 220-221 (1982), *S.C.,* 388 Mass. 1013 (1983).[7] See also *Cities Serv. Oil Co.* v. *Board of Appeals of Bedford,* 338 Mass. 719, 724 (1959).

We think this case presents a proper occasion to consider whether the language of the third paragraph of the present G. L. c. 40A, § 6, countenances the further perpetuation of the equivalence of "discontinued" and "abandoned" in zoning ordinances and by-laws.[8] It will be remembered that § 6 now provides that "[a] zoning ordinance or by-law may define and regulate nonconforming uses and structures abandoned or not used for a period of two years or more." By this language the Legislature has, for the first time, provided express criteria which can be employed by cities and towns outside Boston

---

[7] We acknowledge that the *Cape Resort Hotels* case was decided well after the effective date of the present G. L. c. 40A, § 6. A perusal of the original papers in the appeal in that case (see *Flynn* v. *Brassard,* 1 Mass. App. Ct. 678, 681 [1974], *S.C.,* 4 Mass. App. Ct. 795 [1976]) discloses that the court was not asked to consider the question discussed in this part of our opinion.

[8] This question lurked in the record in *Dawson* v. *Board of Appeals of Bourne,* 18 Mass. App. Ct. 962 (1984), but was not reached because the by-law was framed in the disjunctive and the evidence required a finding that the nonconforming use as a nursing home had been abandoned when the owners of the premises surrendered their license to operate the home.

that may be desirous of extinguishing nonconforming uses. There are two, and only two, criteria; they are distinctly stated in the disjunctive; but a city or town may employ either or both. The first criterion is the familiar "abandonment" on which the cases have concentrated ever since the decision in the *Pioneer Insulation* case in 1954. As the decided cases show, an abandonment is something that can happen momentarily, without the lapse of any stated period of time. See, e.g., *Dawson* v. *Board of Appeals of Bourne,* 18 Mass. App. Ct. 962, 963 (1984), which is discussed in note 8 hereof.

The other criterion in the new § 6 is "not used for a period of two years or more." That language, taken on its face, appears to contemplate a simple cessation of a nonconforming use for a period of at least two years. If that is the meaning properly attributable to the phrase, then the Legislature has authorized the use of an objective standard which is easily understood by the public and easily administered by building inspectors and boards of appeal. If, on the other hand, we are to read into the phrase a requirement of voluntary or intentional action on the part of the owner of nonconforming premises amounting to a traditional "abandonment," such as has been done in the past with the word "discontinued,"[9] then the Legislature must be taken to have indulged in a tautology: the statute would have to be read as authorizing cities and towns to regulate nonconforming uses which have been "abandoned or abandoned for a period of two years or more." We reject any such construction as unreasonable. We think the Legislature, by its choice of the second criterion in § 6, intended to authorize cities and towns to extinguish otherwise protected nonconforming uses if particular premises are not in fact used for the protected purposes for a minimum of two years.

---

[9] The usual lexical definitions of "discontinue" do not embrace any concept of specific intent on the part of the person who discontinues something. See, e.g., Webster's New Intl. Dictionary 744 (2d unabridged ed. 1959), which gives the following definitions: "To interrupt the continuance of; to intermit, as a practice or habit; to put an end to; to cause to cease; to cease using; to give up."

The proper construction of the present G. L. c. 40A, § 6, assumes a very real significance once it is understood that a city or town cannot adopt a new or amended zoning ordinance or by-law which conflicts with pertinent enabling legislation of general application. *Planning Bd. of Reading* v. *Board of Appeals of Reading*, 333 Mass. 657, 660 (1956), and cases cited. In addition, the 1978 annual town meeting in Lakeville was under a legislative imperative to modify its zoning by-law in such fashion as to bring it into conformity with the provisions of the new G. L. c. 40A not later than July 1, 1978.[10] See the second paragraph of St. 1975, c. 808, § 7, inserted by St. 1977, c. 829, § 4. In the circumstances, the town meeting must be taken to have done more than simply enlarge from one year to two the period of time necessary for the extinguishment of a nonconforming use. The town meeting had a choice of adopting either or both of the criteria set out in the new § 6. We think the meeting, by not referring to the "abandonment" criterion, by leaving undisturbed the word "discontinued," and by inserting immediately thereafter the words "for two years or longer," opted for the simple, objective criterion "not used for two years or more."

We conclude that the board of appeals was correct in equating the language of the by-law with that of the cognate provision of the statute. As two of the three dwelling units in question had not been used for more than two years, a building permit was properly refused.

2. The case was submitted to the Superior Court, was decided by that court, and was briefed in this court on the traditional question of abandonment.[11] The trial judge, in his memorandum of decision, was obviously disturbed by the fact that two of the dwelling units had not been used for more than

---

[10] It was agreed at argument that the 1978 amendment of § V(a) of the Lakeville zoning by-law was adopted at the 1978 annual town meeting, which necessarily preceded the July 1, 1978, effective date of the new G. L. c. 40A (*supra* note 6). See G. L. c. 39, § 9.

[11] Counsel agreed at argument that they had discussed the possibility that this case might go off on the ground discussed in part one of our opinion.

ten years prior to the application for a building permit.[12] He noted the portion of the statement of agreed facts which dealt with Mrs. Ryan's declining health and consequent inability to let the premises out following the death of her husband which has already been quoted (*supra,* at 665-666). That portion of the statement has to be read with some care. It recites that Mrs. Ryan's health "steadily declined for *several years until her death*" in 1983 (emphasis supplied). The statement does not disclose when the decline commenced, with the result that there could have been a considerable period of years following the agreed date of January 1, 1974, during which Mrs. Ryan could have let the other two dwelling units out if she had been disposed to do so.

In reality, the plaintiff, who had the burdens of proof and persuasion on the questions of intent and inability as they related to a possible abandonment (see *Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 555-556 [1962]; *Bridgewater* v. *Chuckran,* 351 Mass. 20, 24 [1966]; *Framingham Clinic, Inc.* v. *Zoning Bd. of Appeals of Framingham,* 382 Mass. 283, 297 [1981]; *Warren* v. *Zoning Bd. of Appeals of Amherst,* 383 Mass. 1, 10 [1981]; *Cape Resort Hotels, Inc.* v. *Alcoholic Licensing Bd. of Falmouth,* 385 Mass. at 212; *Martin* v. *Board of Appeals of Yarmouth,* 20 Mass. App. Ct. 972, 972 [1985]: contrast *Brotherhood of Alpha Upsilon, Inc.* v. *Zoning Bd. of Appeals of Bridgewater,* 15 Mass. App. Ct. 991, 992 [1983]), did not give the judge much to work with. In the circumstances, we cannot fault him for attaching primary importance to the period of more than ten years during which the disputed units had not been used and in concluding that there had been an abandonment of the nonconforming use so far as those units were concerned. What happened here is nothing more than what was first envisaged in the *Pioneer Insulation* case, 331 Mass. at 565, and later adumbrated in the *Dobbs* case, 339 Mass. at 686-687.

---

[12] In the *Dobbs* case, 339 Mass. at 686, the court calculated the four-year period of nonuse under consideration there to extend to the date of the hearing in the Superior Court. In this case, such a calculation would have yielded a period of nonuse of eleven years and more than eight months.

3. The plaintiff also argues that he cannot be deprived of a building permit because § V(a) of the Lakeville by-law, unlike some other nonconforming use by-laws which have been considered by the courts, does not expressly prohibit the reestablishment of such a use once it has been extinguished. See, e.g., the *Pioneer Insulation* case, 331 Mass. at 561-562. The essential predicate of the argument is that § V(a) is the only portion of the by-law bearing on the extinguishment of nonconforming uses. The predicate is shaky. It is not at all uncommon to find provisions in other parts of zoning by-laws which control ones such as § V(a) by providing, often in the preface to a table of uses, that no property in the town shall be used except for a purpose expressly permitted by the by-law. Indeed, it appears from the statement of agreed facts in this case that "three family dwelling units were and are not allowed by the initial and [*sic*] amended . . . Lakeville [z]oning [b]y-law." We have not been given any part of the by-law other than § V, and we cannot take judicial notice of what any other part may provide. *Warren* v. *Zoning Bd. of Appeals of Amherst,* 383 Mass. at 8. *Brotherhood of Alpha Upsilon, Inc.* v. *Zoning Bd. of Appeals of Bridgewater,* 15 Mass. App. Ct. at 991. The whole notion of reestablishing an extinguished nonconforming use is repugnant to the concept embodied in the proviso of § V(a). If, as matter of fact, there is some other part of the by-law which supports the plaintiff's position, there has been a failure of proof on the point.

*Judgment affirmed.*