KA-HUR ENTERPRISES, INC. *vs.* ZONING BOARD OF APPEALS
OF PROVINCETOWN.

Suffolk. February 3, 1997. - March 10, 1997.

Present: WILKINS, C.J., LYNCH, O'CONNOR, FRIED, & MARSHALL, JJ.

*Zoning,* By-law, Nonconforming use or structure. *Words,* "Discontinued,"
"Abandoned."

The terms "discontinued" and "abandoned" as employed in a zoning by-
law that tracked the provisions of G. L. c. 40A, § 6, were not synony-
mous, and the nonuse of a certain property for the primary purpose of a
fuel oil storage and distribution center for more than two years resulted
in the loss of its protected status as a nonconforming use under the by-
law. [405-408]

CIVIL ACTION commenced in the Land Court Department
on May 27, 1993.

The case was heard by *Robert V. Cauchon,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Jeanne S. McKnight (Elizabeth A. Lane* with her) for the
defendant.

*Christopher J. Snow* for the plaintiff, submitted a brief.

FRIED, J. The Appeals Court affirmed a judgment by the
Land Court upholding a denial of the plaintiff's application
for a building permit and special permits. 40 Mass. App. Ct.
71 (1996). We granted the plaintiff's application for further
appellate review. We also affirm.

The plaintiff is the owner of property in Provincetown. In
1951, when Provincetown enacted its first zoning by-law, this
property's primary use was a fuel storage and distribution fa-
cility by a company known as Holway Oil, which use
continued through November 13, 1978, when a comprehensive
revision of the by-law was adopted. Because of its location in
a residential district, the property's use was permitted only as
a prior nonconforming use. In 1979, the property was sold to

Nauset Trawling Co. (Nauset), which operated a fishing business and truck repair shop on the property until August, 1987. Nauset continued to store fuel oil in two 20,000-gallon tanks located on the property and used this oil for its fishing vessels, personal residences of the owner and his parents, and occasional sales to out-of-town fishing vessels.

The plaintiff purchased the property in August, 1987. In October, 1992, due to a leaking valve, the plaintiff was ordered to drain the fuel oil it had continued to store in the two 20,000-gallon tanks. In January, 1993, the plaintiff applied for a building permit in order to make improvements to the property which would facilitate the installation of a new 25,000-gallon fuel oil tank and allow the removal of the old tanks from the property. This permit was denied by the building inspector on the ground that during Nauset's ownership of the property, this nonconforming use had been abandoned or discontinued pursuant to art. II, § 2130, of the by-law. The plaintiff appealed from this denial to the zoning board with a request for special permits which would allow changes to preexisting nonconforming uses. The denial was upheld and the special permits were also denied. On appeal to the Land Court, the judge found that Nauset's use of the property for fuel oil storage and distribution was ancillary to its fishing and truck repair business. Because he found the property's primary purpose had not been fuel oil and distribution for over two years, the judge held that the property had lost its protected status as a prior nonconforming use pursuant to art. II, § 2130, of the by-law and G. L. c. 40A, § 6.

The plaintiff presents the same claims it presented to the Appeals Court: (1) contrary to the Land Court's determination, the terms "discontinued" and "abandoned" as employed by the Provincetown zoning by-law, art. II, § 2130, are synonymous and (2) the judge erred in finding that the property's proposed use was no longer a protected nonconforming use. Adopting the rationale of the Appeals Court's opinion, we affirm the holding and address each issue only briefly.

Provincetown's zoning by-law was revised following the enactment of G. L. c. 40A, § 6, in 1975, which stated that "[a] zoning ordinance or by-law may define and regulate nonconforming uses and structures abandoned or not used for a period of two years or more." Tracking this language,

art. II, § 2130, of Provincetown's by-law reads, "A nonconforming use which has been abandoned, or discontinued for a period of two years, shall not be re-established. . . ." The Appeals Court noted:

> "Prior to the passage of the Zoning Act in 1975, the word 'discontinued' in zoning ordinances and by-laws was interpreted to be the legal equivalent of 'abandoned.' *Pioneer Insulation & Modernizing Corp.* v. *Lynn,* 331 Mass. 560, 565 (1954). In *Bartlett* v. *Board of Appeals of Lakeville,* 23 Mass. App. Ct. 664, 669 (1987), however, we rejected the notion that the phrase 'not used for a period of two years or more' in § 6 was the legal equivalent of abandonment requiring a voluntary and intentional relinquishment of the use. In that case we concluded that a municipality now has two choices for terminating nonconforming uses, one being abandonment and the other a simple cessation of a nonconforming use for a period of at least two years."

*Ka-Hur Enters., Inc.* v. *Zoning Board of Appeals of Provincetown,* 40 Mass. App. Ct. 71, 73 (1996). We find this reading to be more consistent with the language of the by-law's enabling statute, see *Bartlett* v. *Board of Appeals of Lakeville, supra* at 669 (otherwise the Legislature enacted a mere tautology "authorizing cities and towns to regulate nonconforming uses which have been 'abandoned or abandoned for a period of two years or more' "), and comports with the legislative history of G. L. c. 40A, § 6, as reviewed by the Appeals Court, *id.* at 666-670; *Ka-Hur Enters., Inc.* v. *Zoning Board of Appeals of Provincetown, supra* at 73-74.

We acknowledge the fact that on two occasions since the enactment of G. L. c. 40A, § 6, this court has issued opinions relying on cases that equate the term "discontinue" with "abandon." See *Derby Ref. Co.* v. *Chelsea,* 407 Mass. 703 (1990); *Cape Resort Hotels, Inc.* v. *Alcoholic Licensing Bd. of Falmouth,* 385 Mass. 205 (1982). Neither case, however, squarely presented us with the occasion to rule on the issue now before us. As the Appeals Court noted in *Bartlett, supra* at 668 n.7, we were not asked to consider this question in the case of *Cape Resort,* which involved a pre-Zoning Act by-law and in which we looked at the effect of a conveyance, holding that "a sale of property protected as a nonconform-

ing use does not by itself establish an abandonment of the use." *Cape Resort Hotels, Inc.* v. *Alcoholic Licensing Bd. of Falmouth, supra* at 221. In *Derby Ref. Co., supra* at 708, we considered the use of the property at issue as a petroleum storage facility after the prior owner had "mothballed"[1] the facility for three years before it was purchased by the plaintiff. In that case, we stated that "the right to continue a nonconforming use . . . can be lost if a predecessor in title has abandoned the use." In *Derby Ref. Co.*, like *Cape Resort*, neither defendant argued that a prior valid nonconforming use had been extinguished by nonuse for a period of two years or more. Instead, each defendant argued that the plaintiff had abandoned the nonconforming use. Thus, our statement in *Derby Ref. Co.* should not be read to require an abandonment in order to extinguish a nonconforming use, but rather as a reaffirmation that abandonment is simply one of the two ways in which a nonconforming use can be extinguished.

The Appeals Court reviewed the evidence and found that the property was primarily used to conduct a fishing business and store and repair trucks during the period of Nauset's ownership. As such, there was a "change or substantial extension"[2] of the prior nonconforming use which caused the property to lose its protection as a preexisting nonconforming use. *Ka-Hur Enters., Inc.* v. *Zoning Board of Appeals of Provincetown, supra* at 74. The Appeals Court found the evidence sufficient to support the judge's conclusion regarding this loss of

---

[1] The prior owner had pumped out the storage tanks, hired a contractor to clean them, purged the feeding lines, filled them with a chemical preservative, and sealed them. The business office was also closed, although the prior owner continued to heat the building, hired a security firm to check the property, maintained its "flammable storage licenses," and installed a "cathodic protection system" to preserve the steel of the empty tanks for the next owner and preserve the value of the property for sale to a party engaged in similar business. *Derby Ref. Co.* v. *Chelsea*, 407 Mass. 703, 705 (1990).

[2] The judge applied the three-part test we announced in *Bridgewater* v. *Chuckran*, 351 Mass. 20, 23 (1966), to determine whether there had been a "change or substantial extension." The three tests ask "(1) Whether the use reflects the 'nature and purpose' of the use prevailing when the zoning by-law took effect. (2) Whether there is a difference in the quality or character, as well as the degree, of use. (3) Whether the current use is 'different in kind in its effect on the neighborhood.' " *Id. See Ka-Hur Enters., Inc.* v. *Zoning Board of Appeals of Provincetown*, 40 Mass. App. Ct. 71, 74 n.3 (1996).

protected status, *id.*, as do we. It is the plaintiff's burden to prove the "requisite similarity" in use to show there was no change in the property's employment and the judge was warranted in finding this burden unmet.

*Judgment affirmed.*