TOWN OF ORANGE[1] vs. JOSEPH SHAY, JR., & another.[2]

No. 06-P-439.

Franklin. November 16, 2006. - March 2, 2007.

Present: LENK, SMITH, & COHEN, JJ.

*Zoning*, Nonconforming use or structure.

A Superior Court judge properly enjoined the defendants in a civil action from certain operations, including gravel removal, on their property, where the removal operation was not protected from the town's zoning by-law as a prior nonconforming use, in that the defendants' predecessor in title had extinguished that use by both abandonment and discontinuance, having ceased that use for not only more than two years (signaling discontinuance), but a significant period of time (forty years). [361-362, 364]
Discussion of the distinction between "discontinuance" and "abandonment" in cases involving the extinguishment of prior nonconforming uses. [362-364]

CIVIL ACTION commenced in the Superior Court Department on September 18, 2002.

The case was heard by *Mary-Lou Rup*, J.

*Scott Graves* for Joseph Shay, Jr.

*Donna L. MacNicol* for the plaintiff.

LENK, J. Judgment entered after a bench trial permanently enjoining the defendants, Joseph Shay, Jr., and Michael Generazio, from further removing gravel or other material, including topsoil, from their property located at Holtshire Road in Orange (town).[3] On appeal, the defendants claim that their current gravel

---

[1]By and through its building inspector, Brian Gale.

[2]Michael Generazio.

[3]This case is a consolidation of the defendants' appeal from a town zoning board of appeals decision (G. L. c. 40A, § 17) and from the town's enforcement order (G. L. c. 40A, § 7). The building inspector originally issued a cease and desist order on March 13, 2002. The defendants then appealed the order to the town's zoning board of appeals, which upheld the order; the

and sand removal operation is protected from the town's zoning by-law as a prior nonconforming use that was never abandoned. They contend that, in determining otherwise, the judge erred in certain of her rulings of law and made findings of fact that were clearly erroneous. We affirm.

*Background.* At issue in this case is an approximately eight-acre portion (the parcel) of twenty-three acres of property located in Zoning District C. The defendants' predecessor in title, Ronald Hurlburt, inherited the property from his mother in 1944 and sold it to the defendants in 2000. The parcel was originally used by the Hurlburt family for pasture and a hay field. Around 1935, Hurlburt began a small sand and gravel removal operation in the rear northeast section of the parcel in conjunction with his farming activities (the original sand and gravel operation). The use expanded considerably in the period from 1957 to 1958, and the parties offered conflicting evidence as to the extent of such use thereafter. Prior to 1981, Hurlburt's use of the parcel for gravel removal did not violate any town zoning ordinance; on August 24, 1981, however, the town amended its by-law to require a special permit for earth removal. After the defendants acquired the property in 2000, they began a sand and gravel operation on the entire parcel, which involved removing topsoil, trees, shrubs, and vegetation from the property. The defendants did not obtain a special permit for that purpose. Complaints from neighbors about increased traffic from trucks and heavy equipment, as well as an abundance of noise, dirt and dust in the area, set in motion the legal proceedings described above.[4]

1. *The defendants' case.* At trial, Hurlburt, his long-time

---

defendants appealed to the Superior Court. When the defendants refused to cease and desist their operation, the town filed a complaint in the Superior Court as well as a motion for a preliminary injunction; this motion was denied on June 24, 2003. The defendants subsequently halted the operation pursuant to a cease and desist order from the town conservation commission and the Department of Environmental Protection for violations of the Wetlands Protection Act, G. L. c. 131, § 40. In November, 2003, however, the defendants resumed their operation and the town renewed its motion for a preliminary injunction. Before the judge issued his decision, the parties agreed that the defendants would cease operations until a trial on the merits. The defendants' appeal from the decision of the zoning board of appeals was consolidated with the town's complaint, and a trial on the merits was held on September 27 and 28, 2004. The issues in both actions are the same.

[4]See note 3, *supra.*

neighbor Ronald Stone, and the defendant Shay testified to the following. Although part of the parcel was used as pasture and a hay field, in 1935 Hurlburt began the original sand and gravel operation on approximately one acre of the parcel; this operation continued to varying degrees over the next two decades. From 1957 to 1958, Hurlburt greatly expanded his sand and gravel operation to include the entire parcel in order to meet the demand for materials occasioned by the reconstruction of a nearby portion of Route 2. This necessitated the removal of all trees and the use of dump trucks, front-end loaders, bulldozers, scraper/loader pans, and tractors on the parcel during the daylight hours.[5] After 1958, the sand and gravel operation continued on the entire parcel, except for a small portion of land in the front, up until the time the parcel was sold to the defendants; the scope of the sand and gravel operation ebbed and flowed in response to demand, but was never abandoned.

2. *The town's case.* Phyllis Kingsbury, Pauline Bixby, Thomas Pearson, Alana and Thomas Cox, Thomas Forest, and Larry Hurlburt,[6] all of whom had lived in the area for many years, testified as follows for the town. Although the original sand and gravel operation was in place to varying degrees over the years, gravel removal even in 1957 and 1958 did not extend to the entire parcel but rather was limited to a small portion in the northeast and east rear part of the parcel (the 1957-1958 operation)[7]; the remaining land in the front of the parcel was always used as a pasture or hay field. Before the defendants started their gravel operation, trucks infrequently (about once each year) drove to the rear of the parcel, presumably to obtain sand and gravel; after 2001, however, traffic increased to about fifty trucks entering and leaving the parcel on a daily basis from about 7:00 A.M. until about 6:00 P.M.[8] A high level of noise resulted from the operation of heavy equipment, including

---

[5]Hurlburt testified that he sold all his cows in 1957 and 1958 in order to use the parcel solely for gravel removal.

[6]Larry Hurlburt is the son of Ronald Hurlburt.

[7]The exact dimensions of the 1957-1958 operation are not in the record, but it appears from the town witnesses' testimony that it did not come close to involving the entire parcel.

[8]The defendant Shay testified, in contrast, that traffic was limited to seven or eight trucks per day, "doing about eight or [nine] loads apiece."

excavators, dump trucks, and bucket loaders, and sand and dust blew onto neighboring property.

3. *The judge's ruling.* The trial judge did not find the defendants' evidence credible; she instead credited the testimony of the towns' witnesses and found that the original operation, while perhaps expanded somewhat in 1957 and 1958, never expanded to include the entire parcel.[9] She concluded that the defendants' operation failed all three prongs of the test set forth in *Bridgewater* v. *Chuckran*, 351 Mass. 20, 23 (1966), and *Powers* v. *Building Inspector of Barnstable*, 363 Mass. 648, 653 (1973), and was thus an impermissible expansion of a prior nonconforming use.[10] She went on to say that, even if she were to credit the defendants' evidence to the effect that the 1957-1958 operation involved the entire parcel, she would nonetheless conclude, based on the facts she found credible and as matter of law, that Hurlburt had abandoned the use of the *entire* parcel for sand and gravel removal after 1958.

*Discussion.* We must accept "the trial judge's findings of fact unless they are clearly erroneous." *Tamerlane Realty Trust* v. *Board of Appeals of Provincetown*, 23 Mass. App. Ct. 450, 453 (1987). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *J.A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789, 792 (1986), quoting from *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395 (1948). When the trial judge has seen and heard the witnesses, we may revise the find-

---

[9]The judge had before her, among other exhibits, photographs of the parcel in the 1960's showing a pasture and a horse grazing, as well as pictures taken in 2002 showing the extent of defendants' use of the parcel.

[10]General Laws c. 40A, § 6, provides protection in the form of exemption from subsequently enacted zoning ordinances for any prior nonconforming use that does not substantially extend that use to the detriment of the neighborhood. Our case law has applied a three-pronged test outlined in *Bridgewater* v. *Chuckran*, 351 Mass. at 23, and *Powers* v. *Building Inspector of Barnstable*, 363 Mass. at 653, to make the requisite determination. "Under that test, we inquire: (1) 'Whether the [current] use reflects the "nature and purpose" of the [prior] use,' (2) 'Whether there is a difference in the quality or character, as well as the degree, of use,' and (3) 'Whether the current use is "different in kind in its effect on the neighborhood." ' " *Derby Ref. Co.* v. *Chelsea*, 407 Mass. 703, 712 (1990), quoting from *Bridgewater* v. *Chuckran*, *supra.*

ings of the judge "only in a very clear and exceptional case." *Spiegel* v. *Beacon Participations, Inc.*, 297 Mass. 398, 407-408 (1937), quoting from *Thomas* v. *Beals*, 154 Mass. 51, 52 (1891). "[C]redibility of a party or other witness who appeared at trial is quintessentially the domain of the trial judge, in which the judge's assessment is close to immune from reversal on appeal except on the most compelling of showings." *Johnston* v. *Johnston*, 38 Mass. App. Ct. 531, 536 (1995). No such showing has been made here. Further, while it has not been made to appear that the judge erred in her application of the *Bridgewater* v. *Chuckran* test to the facts she found, we need not reach or address the point given the extinguishment of the prior use.

The trial judge was correct to conclude as matter of law that, even if it were to be assumed that the 1957-1958 operation had involved the entire parcel, Hurlburt had nonetheless abandoned that use after 1958.[11]

The town's amended zoning by-law, enacted in 1981, provides that "[a] nonconforming use which has been discontinued for two or more years shall not be re-established, and all future use shall conform to this bylaw." The 1981 by-law required a special permit for all earth removal activities, with the exception of three limited circumstances not applicable here. Whatever the extent of the 1957-1958 operation, use to such an extent was nonrecurring thereafter, i.e., gravel removal use of that magnitude had been discontinued for two or more years by around 1960. The prior nonconforming use was thus extinguished by nonuse for two or more years.

We recognize, however, that although the trial judge used the terms "discontinuance" and "abandonment" interchangeably, the terms are in fact distinct, and this interchangeable use of the terms may have engendered some confusion. While the outcome here remains unaffected, clarification may be useful.

Prior to enactment of the Zoning Act, G. L. c. 40A, in 1975, our case law construed the terms "abandoned" and "discontinued" as being synonymous. Whether a particular municipal

---

[11]Although the defendants contend that the issue of abandonment was not before the judge, they are incorrect. The defendants argued at trial that the 1957-1958 operation involved the entire parcel and was never abandoned, and the judge acted appropriately in ruling on that issue.

zoning ordinance provided for extinguishment of nonconforming uses by use of the term "abandoned" or "discontinued" was of no moment since the terms were deemed interchangeable. See *Pioneer Insulation & Modernizing Corp.* v. *Lynn*, 331 Mass. 560, 564-565 (1954). See generally Alper & Woodward, *Ka-Hur Enterprises, Inc.* v. *Zoning Board of Appeals of Provincetown*: Extinguishment of Non-Conforming Uses, 42 Boston Bar J. 8 (January/February 1998).

Since 1975, however, the Zoning Act has permitted municipalities to "define and regulate nonconforming uses and structures abandoned or not used for a period of two years or more." G. L. c. 40A, § 6, as appearing in St. 1975, c. 808, § 3. In so doing, the Legislature provided two separate avenues by which a prior nonconforming use can be extinguished: (a) abandonment; and (b) a period of nonuse of two or more years. The two concepts were thus no longer interchangeable. See *Ka-Hur Enterprises, Inc.* v. *Zoning Bd. of Appeals of Provincetown*, 424 Mass. 404, 406 (1997)[12]; *Bartlett* v. *Board of Appeals of Lakeville*, 23 Mass. App. Ct. 664, 668-669 (1987). Abandonment requires "the concurrence of two factors, (1) the intent to abandon and (2) voluntary conduct, whether affirmative or negative, which carries the implication of abandonment." *Dial Away Co.* v. *Zoning Bd. of Appeals of Auburn*, 41 Mass. App. Ct. 165, 172 (1996), quoting from *Derby Ref. Co.* v. *Chelsea*, 407 Mass. 703, 708 (1990). While abandonment can happen "momentarily, without the lapse of any stated period of time," the phrase "not used," as the Legislature employed it, contemplates "a simple cessation of a nonconforming use for a period of at least two years." *Bartlett* v. *Board of Appeals of*

---

[12]In *Ka-Hur*, the court acknowledged that, since the enactment of G. L. c. 40A, § 6, it had issued two opinions, *Derby Ref. Co.* v. *Chelsea*, 407 Mass. 703 (1990), and *Cape Resort Hotels, Inc.* v. *Alcoholic Lic. Bd. of Falmouth*, 385 Mass. 205 (1982), that equated "abandoned" with "discontinued." *Ka-Hur* v. *Zoning Bd. of Appeals of Provincetown*, *supra* at 406-407. The court distinguished its decisions in both those cases, concluding that *Cape Resorts* involved a pre-Zoning Act by-law and a conveyance, while in *Derby Ref. Co.*, the municipality argued that the use had been abandoned. *Ibid.* The court stated that "our statement in *Derby Ref. Co.* should not be read to require an abandonment in order to extinguish a nonconforming use, but rather as a reaffirmation that abandonment is simply one of the two ways in which a nonconforming use can be extinguished." *Id.* at 407.

*Lakeville, supra* at 669. See *Davis* v. *Zoning Bd. of Chatham*, 52 Mass. App. Ct. 349, 353 n.9 (2001).

As earlier discussed, regardless of the extent of the prior nonconforming use in this case, it was extinguished by discontinuance in or about 1960. Unlike the 1981 town zoning by-law, which allowed for extinguishment only by discontinuance, the 2000 by-law — also applicable here — added abandonment as another method by which a prior nonconforming use can be terminated.[13] In view of this, the judge correctly concluded that use of the entire parcel for gravel and sand removal had been abandoned. Where "the lapse of time following the [cessation of the nonconforming use] . . . is so significant that abandonment exists as a matter of law . . . [,] 'evidence of things done or not done . . . carries the implication of abandonment . . . [and] [s]upports a finding of intent, whatever the avowed state of mind of the owner . . . .' " *Dial Away Co.* v. *Zoning Bd. of Appeals of Auburn*, 41 Mass. App. Ct. at 172, quoting from *Dobbs* v. *Board of Appeals of Northhampton*, 339 Mass. 684, 686-687 (1959) (twenty-three years after cessation of activity). The 1957-1958 operation, whether involving only the northeast and east rear portions of the parcel, or extending to the entire parcel, ceased altogether in 1958, and the passage of over forty years carries a clear implication of abandonment.[14]

Because the prior nonconforming use was extinguished by both abandonment and discontinuance, we need not address the question whether the current use of the parcel is a permissible extension of that use. See *Oakham Sand & Gravel Corp.* v. *Oakham*, 54 Mass. App. Ct. 80, 84 (2002).

*Judgment affirmed.*

---

[13]The 2000 town by-law reads, in relevant part: "[a] nonconforming use which has been abandoned, discontinued for a period of two years . . . or changed to a conforming use, shall not be re-established and any further use of the premises shall conform with this By-law."

[14]We note that there was some evidence that gravel removal continued on the one-acre site of the original operation, perhaps until the defendants bought the property. Although it is possible that the defendants could continue to use that small gravel pit, see *Burlington* v. *Dunn*, 318 Mass. 216, 223, cert. denied, 326 U.S. 739 (1945), we decline to address the point because the defendants have not argued it and apparently make no claim as to that acre.