OUSAMMA CHAMSEDDINE *vs.* ZONING BOARD OF APPEALS OF
TAUNTON.

No. 06-P-759.

Bristol. February 6, 2007. - September 28, 2007.

Present: KANTROWITZ, ARMSTRONG, & DOERFER, JJ.[1]

*Subdivision Control,* Zoning requirements. *Zoning,* Amendment of by-law or
   ordinance, Lot size.

A Superior Court judge correctly held that a decision of a local zoning board
   of appeals, which ruled that the lot at issue was subject to current zoning
   ordinance dimensional requirements and was therefore unbuildable, was in
   excess of its authority, where the lot satisfied all four criteria needed to
   qualify for grandfather protection under G. L. c. 40A, § 6, fourth par.,
   despite an earlier restriction on building on the lot that had since expired.
   [305-308]

CIVIL ACTION commenced in the Superior Court Department on
March 15, 2002.

The case was heard by *John P. Connor, Jr.,* J., on motions for
summary judgment.

*Steven A. Torres,* City Solicitor, for the defendant.

*William D. Rounds* for the plaintiff.

ARMSTRONG, J. The plaintiff wishes to buy lot 30A shown on a
residential subdivision plan approved by the Taunton zoning
board on July 16, 1987, provided that the lot is buildable. The
lot has an area of 141,836 square feet and frontage of 300 feet,
far in excess of the district's requirements of 60,000 square feet
and 150 feet of frontage for a residence. The lot would be
buildable but for having only 35,000 square feet of contiguous
upland.[2] This was sufficient under the zoning ordinance in ef-

---

[1] Justice Doerfer participated in the deliberation on this case prior to his
retirement.

[2] Sometimes referred to by the zoning board of appeals as "contiguous dry
area."

fect in 1987, but an amendment to the ordinance in 1989 revised the contiguous upland requirement to one acre (i.e., 43,560 square feet). The question before us on appeal is whether, as the zoning board ruled, the lot is subject to the current zoning ordinance dimensional requirements, or whether, as the plaintiff contends, the lot has grandfather protection under G. L. c. 40A, § 6, fourth par. In the Superior Court the judge ruled that lot 30A was grandfathered and thus reversed the board's decision.

The board argues that the judge erred because, at the time the subdivision plan was approved, lot 30A was designated as being unbuildable under the provision of G. L. c. 41, § 81U, as appearing in St. 1958, c. 377, which states:

> "Before approval of a plan by a planning board, said board shall also in proper cases require the plan to show a park or parks suitably located for playground or recreation purposes . . . , and if so determined said board shall by appropriate endorsement on the plan require that no building may be erected on such park or parks for a period of not more than three years without its approval."

The three-year period not having expired, lot 30A was not a lot available for residential use in 1989 when the zoning ordinance was amended to increase the contiguous upland required for buildability. As a result, the board argues, lot 30A was not, in the words of G. L. c. 40A, § 6, fourth par., as inserted by St. 1975, c. 808, § 3:

> "a lot for single and two-family residential use which at the time of . . . [the zoning change[3]] . . . was not held in common ownership with any adjoining land, conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage."

The board concedes that in 1989, at the time of the zoning

---

[3]The statutory words, "at the time of recording or endorsement, whichever occurs sooner," substituted for above, were interpreted by *Adamowicz* v. *Ipswich*, 395 Mass. 757, 762-764 (1985), to refer to the time of the amendment to the zoning ordinance or by-law which would have the effect of making the lot unbuildable. Under *Adamowicz* one looks to the most recent instrument of record prior to the date of the zoning amendment to determine whether the lot in question was held in common ownership with any adjoining land.

change, lot 30A met each of the last three criteria, but argues that it was not grandfathered because it was not then available for the construction of a residence; that is to say, it was not in 1989 "a lot for single and two-family residential use."

The three-year limitation did not appear in G. L. c. 41, § 81U, when it was first adopted, as part of the then new "Subdivision Control Law." See St. 1953, c. 674, § 7. The limitation was added by St. 1955, c. 324, on recommendation of a Special Commission on Planning, Zoning, and Subdivision Control authorized by Resolves of 1954, c. 97. The commission's report, 1955 House Doc. No. 2480, which proposed numerous modifications of the Subdivision Control Law, stated, as to § 81U:

> "Under section 81U of the subdivision control law, planning boards may, in proper cases, require a plan to show reasonable park areas and may thereafter prohibit the erection of buildings in such areas. The owners of these areas cannot be forced to give them to the municipality without compensation, but no limit is set upon the time within which the municipality must act. It was suggested to the Commission that a time limit of three years be set on the power of the community to prohibit the erection of buildings. This would permit ample time to bring each proposal before an annual town meeting and to complete the legal formalities connected with taking title to the land. This time limit, for the benefit of conveyancers, should be made a matter of record on the plan."

The text adopted by the Legislature as the final paragraph of § 81U is in substance that recommended by the commission in Appendix C of House Doc. No. 2480.

The contemplation of G. L. c. 41, § 81U, therefore, is that a restriction imposed under the authority of that section will last for three years only, to give the municipality time to decide whether to purchase the lot for recreational purposes.[4] If no pur-

---

[4]It is clear under G. L. c. 41, § 81Q, as inserted by St. 1953, c. 674, § 7, that "no planning board [may] impose, as a condition for the approval of a plan of a subdivision, that any of the land within said subdivision be dedicated to the public use, or conveyed or released to . . . [the municipality] . . . for [public] use . . . without just compensation to the owner thereof." See *Young*

Chamseddine *v.* Zoning Board of Appeals of Taunton.

chase is made, the restriction ends at the three-year point. Since Taunton made no move to acquire lot 30A during the three-year period, the lot would in the normal course have been available for use as a house lot thereafter.

The three-year restriction on building did not, we think, change the character of the land from single and two-family residential, so as to preclude application of the grandfather clause of G. L. c. 40A, § 6, fourth par. The purpose of that clause is to alleviate the hardship that zoning amendments can cause to small residential owners. It is restricted to the small, one and two-family home owners; it is not available to apartment house owners, much less to commercial and industrial owners. The three-year restriction under § 81U did not change the character of the land from residential to, say, commercial or industrial. Lot 30A remained at all times a lot zoned for one or two-family residential use. The three-year building restriction had no effect on the four criteria needed to qualify for grandfather protection under G. L. c. 40A, § 6, fourth par.: that the land be zoned for one or two-family residences; that it not be held in common ownership with adjoining land; that it conformed to then existing requirements; and that it had at least 5,000 square feet and fifty feet of frontage. It follows that the 1989 increase in the contiguous upland requirement to one acre does not apply to lot 30A.

The judge correctly held that the decision of the zoning board of appeals was in excess of its authority and ordered it vacated.

*Judgment affirmed.*

v. *Planning Bd. of Chilmark*, 402 Mass. 841, 844-845 (1988).