PLAINVILLE ASPHALT CORP. *vs.* TOWN OF PLAINVILLE.

No. 12-P-1022.

Suffolk. February 28, 2013. - June 6, 2013.

Present: VUONO, RUBIN, & SULLIVAN, JJ.

*Zoning,* By-law, Nonconforming use or structure. *Municipal Corporations,* By-laws and ordinances.

In a civil action brought in the Land Court by an asphalt manufacturer seeking a determination whether the use of its property as a bituminous concrete operation was permitted under the defendant town's bylaw as a nonconforming use, the judge properly granted summary judgment in favor of the town, where, under the plain words of the bylaw, the production of bituminous concrete became a nonconforming use as of 1967, no matter whether it created dust, noise, and odor [711-714]; and where the manufacturer's use of the premises became nonconforming through nonuse for two or more years, and therefore no longer enjoyed the protection of either G. L. c. 40A, § 6, or the bylaw [714-718].

CIVIL ACTION commenced in the Land Court Department on April 29, 2010.

The case was heard by *Gordon H. Piper,* J., on motions for summary judgment.

*Brian M. Hurley* for the plaintiff.

*Katharine I. Doyle* for the defendant.

SULLIVAN, J. This appeal calls upon us to decide the reach of a town bylaw amendment that expanded the reasons for discontinuation of nonconforming uses, and the relationship between that bylaw and the first and third paragraphs of G. L. c. 40A, § 6. Plainville Asphalt Corp. (Plainville Asphalt) brought an action pursuant to G. L. c. 240, § 14A, seeking a determination whether the use of its property as a bituminous concrete operation was permitted. It now appeals from the allowance of a motion for summary judgment in favor of the town of Plainville (town), in which a judge of the Land Court held that the plaintiff's

business was engaged in a nonconforming use and had lost its "grandfather" protection through nonuse. We affirm.

*Background.* The essential facts are undisputed. As early as 1965, Plainville Asphalt's predecessor manufactured bituminous concrete at the Plainville site. At that time, the town's zoning bylaws allowed bituminous concrete facilities provided that the effects of this commercial use did not exceed certain dust, odor, and noise limitations outside the site. In 1967, the town amended the bylaw's "use regulation" table (§ 2.8) to provide that certain uses were "excluded or prohibited use[s] in all districts in the town." Specifically, § 2.8 was amended to provide that "Cement, Concrete and Bituminous Product Manufacture and Similar Operations Causing Dust, Noise and Odor" are "excluded or prohibited use[s]."[1] However, under § 3.1.1 of the bylaw then in effect, the existing use was "grandfathered" as a nonconforming use, subject to loss only by abandonment.[2] In 1983, however, the bylaws were amended to provide that nonconforming uses were extinguished if a use was either abandoned or "cease[d] to be a nonconforming use."

In 2002, Plainville Asphalt sold certain assets and liabilities and agreed to noncompete provisions in the terms of sale. It is undisputed that Plainville Asphalt did not produce bituminous concrete from its Plainville location from January 1, 2003, through at least 2009.

*Discussion.* On appeal, "[w]e review the decision to grant summary judgment de novo." *Miller* v. *Cotter*, 448 Mass. 671, 676 (2007). We look to the summary judgment record to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1401 (2002).

1. *Nonconforming use.* Plainville Asphalt contends that the

---

[1]Section 2.8 is a chart that lists various uses, together with certain designations. Under "Industrial Uses" appears the above quoted language, together with the designation "O," which means "[a]n excluded or prohibited use."

[2]This appeared in the 1965 bylaw in effect in 1965, and was not changed by the 1967 amendment.

manufacture of bituminous concrete product is not a use prohibited by the zoning bylaws, but remains a use as of right. This construction of the bylaw is achieved by reading § 2.8 in tandem with § 3.4,[3] which generally prohibits certain types and volumes of noise, dust, or odors that have an impact beyond the site of otherwise permitted commercial operations. Thus, Plainville Asphalt argues, the 1967 amendment was intended to prohibit only those uses specified in § 2.8 that fail to meet the standards set out in § 3.4; that is, the enumeration of "Cement, Concrete and Bituminous Product Manufacture" among the uses listed as prohibited or excluded in § 2.8 was meant not by way of exclusion, but clarification of the types of uses to which § 3.4 applied. The Land Court judge disagreed with this construction of § 2.8, concluding that all cement, bituminous, and concrete operations, without exception or limitation, became nonconforming uses under § 2.8 and were prohibited by the 1967 amendment.

When interpreting bylaws, we resort to familiar rules of statutory construction. See *Shirley Wayside Ltd. Partnership* v. *Board of Appeals of Shirley*, 461 Mass. 469, 477 (2012). We first look

---

[3]Section 3.4 provides as follows:

> "*Specific Standards in Commercial and Industrial Districts*[:] No activity shall be permitted in commercial or industrial districts unless its operation is conducted such that any noise, vibration or flashing is not normally perceptible above street noise without instruments at any point further than the following:

> "(a) For activities within a commercial district, eighty feet beyond the premises.

> "(b) For activities within an industrial district, 250 feet beyond the premises, or at any point 100 feet within a residential district.

> "The operation shall be so conducted that all resulting cinders, dust, fumes, gases, odors, smoke, radiation, and electromagnetic interference is effectively confined to the premises or disposed of so as to avoid any pollution. Smoke density shall not exceed #2 of the Ringelmann scale for more than 10 [per cent] of the time and at no time shall exceed #3 on that scale. The activity shall not be detrimental to the neighboring property by reason of special danger of fire or explosion."

Section 3.4 was added by the same amendment in 1967, and combined the provisions for commercial and industrial standards previously found in §§ 3.6.1 and 3.6.2.

to the language of the bylaw and, where that language is plain and unambiguous, we enforce the bylaw according to its plain wording. See *ibid.* Section 2.8 is the more specific provision that lists nonconforming uses, whereas § 3.4 is a more general section that imposes conditions or limitations on otherwise permitted uses that result in certain offsite impacts. The more specific statute or bylaw controls over the more general. See *Grady* v. *Commissioner of Correction, ante* 126, 131-132 (2013). We thus start with § 2.8 to determine the extent of its prohibition on manufacture of bituminous concrete.

Plainville Asphalt's interpretation of § 2.8 applies the phrase "Causing Dust, Noise and Odor" not just to "Similar Operations," but to "Cement, Concrete and Bituminous Product Manufacture" as well. The judge, however, applied the rule of the last antecedent, which holds that "qualifying phrases are to be applied to the words or phrase immediately preceding and are not to be construed as extending to others more remote." *Russell* v. *Boston Wyman, Inc.,* 410 Mass. 1005, 1006 (1991), quoting from *United States* v. *Ven-Fuel, Inc.,* 758 F.2d 741, 751 (1st Cir. 1985). We agree with the Land Court judge's application of the rule. The phrase "Causing Dust, Noise and Odor" applies only to "Similar Operations" in § 2.8. It does not apply to "Cement, Concrete and Bituminous Product Manufacture" generally. The prohibition under § 2.8 is thus unambiguous and renders the bituminous operation here nonconforming.

Nonetheless, the rule of the last antecedent, while grammatically correct, does not apply if there "is something in the subject matter, dominant purpose, or language of the statute that requires a different interpretation." *Mauri* v. *Zoning Bd. of Appeals of Newton, ante* 336, 342 (2013), quoting from *Herrick* v. *Essex Regional Retirement Bd.,* 77 Mass. App. Ct. 645, 650 (2010). We see nothing in the purpose or language of the bylaw, however, that suggests a different interpretation.

The town's legislative body is presumed to be aware of existing bylaws when it amends or enacts a new one. Cf. *Weber* v. *Coast to Coast Med., Inc., ante* 478, 482-483 (2013). As a reviewing court, we are guided by the corollary principle that statutes or bylaws dealing with the same subject should be interpreted harmoniously to effectuate a consistent body of law.

See *Grady, supra.* Plainville Asphalt asserts that a construction of the bylaw that renders its bituminous operation nonconforming fails to give a fair and complete reading of the bylaws as a whole, because it fails to take into consideration the intent of § 3.4 to limit the over-all generation of dust, odor, and noise. As the Land Court judge aptly pointed out, however, the proposed reading of § 3.4 would make the addition of "Cement, Concrete and Bituminous Product Manufacture" to § 2.8 under the 1967 bylaw amendment superfluous. The provisions of § 3.4 banning excessive dust, noise, and odor applied to bituminous concrete operations before 1967. The plain meaning of § 2.8, therefore, is that bituminous concrete production became a prohibited use as of 1967, no matter whether it creates "dust, noise and odor." See generally *Rockwood* v. *Snow Inn Corp.,* 409 Mass. 361, 364 (1991) (construction which would render the words of a statute "meaningless surplusage" rejected). Even if the words of the bylaw were ambiguous (which they are not), the same rules of statutory construction would militate in favor of resolving those ambiguities in such a way as to give meaning to all the words and phrases of the bylaw. Cf. *Libertarian Assn. of Mass.* v. *Secretary of the Commonwealth,* 462 Mass. 538, 550 (2012) (interpreting an ambiguous statute in a manner consistent with the statutory scheme as a whole).[4]

2. *Grandfathering of prior nonconforming use.* As noted above, in 1965, when Plainville Asphalt's predecessor began operating at the site, § 3.1.1 of the town's bylaw provided that preexisting nonconforming uses were protected from zoning

---

[4]Plainville Asphalt also argued on summary judgment that the town had interpreted § 2.8 of the bylaw to prohibit bituminous concrete operations only where dust, noise, and odor were not confined to the premises. Because the bylaw is unambiguous, we do not resort to extrinsic evidence to determine its meaning. See *Department of Community Affairs* v. *Massachusetts State College Bldg. Auth.,* 378 Mass. 418, 427 (1979). Even if we were to assume the bylaw were ambiguous, Plainville Asphalt's supporting materials refer to actions taken by the building inspector, and on occasion the planning board, actions which are not binding on the zoning board of appeals or the town, and therefore not properly considered in this context. "The right of the public to have the zoning by-law properly enforced cannot be forfeited by the action of [a municipality's] officers." *Building Commr. of Franklin* v. *Dispatch Communications of New England, Inc.,* 48 Mass. App. Ct. 709, 715-716 (2000), quoting from *Building Inspector of Lancaster* v. *Sanderson,* 372 Mass. 157, 162 (1977).

changes, except in cases of abandonment for one year. In 1983, the town amended § 3.1.1 to provide that preexisting nonconforming uses were protected from zoning changes, except in cases of abandonment *or* where "the use of a premises or the use of a structure ceases to be continued in nonconforming use" for one year.[5]

Plainville Asphalt contends that the "grandfathering" of prior nonconforming use pursuant to G. L. c. 40A, § 6, first par., is governed not by the 1983 amendment to the bylaw permitting loss by nonuse, but by the bylaw in existence at the time the use began in 1965 or when it became nonconforming in 1967. Thus, Plainville Asphalt maintains that the use of the property for bituminous operations was an "as of right" use continuously since 1965, subject to forfeiture only by abandonment, not nonuse.[6]

This constitutes a strained and incorrect reading of the statute, which must be construed as a whole. See *Libertarian Assn. of Mass.*, 462 Mass. at 551. Protection of nonconforming uses is governed by the first paragraph of G. L. c. 40A, § 6, which provides that "a zoning ordinance or by-law shall not apply to . . . uses lawfully in existence . . . , but shall apply to any change or substantial extension of such use . . . ."[7] This paragraph protects a permitted nonconforming use from certain

---

[5]Both parties agree that the one-year period specified in the bylaw is superseded by the more generous two-year floor in G. L. c. 40A, § 6, third par.

[6]Plainville Asphalt continued to maintain the property and made significant improvements to the property during the period of the noncompete. The judge found that there was a genuine dispute of fact as to whether Plainville Asphalt abandoned use of the site. He also found, however, that the dispute was not a material one, because Plainville Asphalt's nonconforming use was lost through nonuse for more than two years. We do not reach the issue, as we too decide the case on the basis of nonuse, rather than abandonment.

[7]General Laws c. 40A, § 6, first par., provides in pertinent part: "Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun, or to a building or special permit issued before the first publication of notice of the public hearing on such ordinance or by-law required by section five, but shall apply to any change or substantial extension of such use, to a building or special permit issued after the first notice of said public hearing, to any reconstruction, extension or structural change of such structure and to any alteration of a structure begun after the first notice of said public hearing to provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent . . . ."

bylaw changes in effect at the time the use is ongoing, but permits the loss of that protection if the use changes or is extended. We need not decide whether the 1983 amendment's addition of nonuse to the reasons for loss of protection as a nonconforming use constitutes the type of change or subsequent extension contemplated by the first paragraph, because the General Court has granted cities and towns the clear authority to regulate nonconforming uses in G. L. c. 40A, § 6, third par. This paragraph explicitly permits municipalities to "define and regulate nonconforming uses and structures abandoned or not used for a period of two years or more" by means of "[a] zoning ordinance or by-law."[8] The plain meaning of "the actual words chosen by the Legislature," *Tyler* v. *Michaels Stores, Inc.*, 464 Mass. 492, 495 (2013), is that § 6, third par., permits extinguishment by nonuse of uses (and structures) which otherwise would enjoy grandfathering protection under the first paragraph.[9] *Bartlett* v. *Board of Appeals of Lakeville*, 23 Mass. App. Ct. 664, 667 (1987).

Relying on the Supreme Judicial Court's opinion in *Rourke* v. *Rothman*, 448 Mass. 190 (2007), Plainville Asphalt suggests that § 6, as a whole, "provides protection . . . from changes to grandfathering provisions" in local bylaws. *Rourke*, however, was decided under § 6, fourth par., applicable to residential lots, see *Willard* v. *Board of Appeals of Orleans*, 25 Mass. App. Ct. 15, 18-19 (1987),[10] not the third paragraph, which applies to structures and uses. G. L. c. 40A, § 6, fourth par., contains

---

[8]General Laws c. 40A, § 6, third par., provides: "A zoning ordinance or by-law may define and regulate nonconforming uses and structures abandoned or not used for a period of two years or more."

[9]The legislative grant of authority to cities and towns outside of Boston to extinguish nonconforming uses dates to 1933. See *LaMontagne* v. *Kenney*, 288 Mass. 363, 368 (1934); *Bartlett* v. *Board of Appeals of Lakeville*, 23 Mass. App. Ct. 664, 667 (1987) (setting forth the legislative history). Despite some early conflation of the terms "abandonment" and "discontinuance," it is now clear that the term "not used" in § 6, third par., is "intended to authorize cities and towns to extinguish otherwise protected nonconforming uses of particular premises that are not in fact used for the protected purposes for a minimum of two years." *Bartlett, supra* at 669, cited with approval in *Ka-Hur Enterprises, Inc.* v. *Zoning Bd. of Appeals of Provincetown*, 424 Mass. 404, 406 (1997). See *Orange* v. *Shay*, 68 Mass. App. Ct. 358, 362-363 (2007).

[10]More specifically, the fourth paragraph applies to vacant land or to a lot which was at one time improved by a structure but the bylaw at the time of

provisions exempting certain residential lots from enumerated zoning restrictions provided that, among other things, they "conformed to then existing requirements." *Rourke* interpreted the relationship between the phrase "then existing requirements" in the fourth paragraph and the "grandfather clauses" in local ordinances, and held that the phrase "then existing requirements" in the fourth paragraph encompassed the "grandfather" provisions of the town bylaws regulating nonconforming residential lots. See *Rourke, supra* at 197-198. This interpretation of the fourth paragraph was consistent with the underlying legislative policy expressed in the first sentence of that paragraph, "the manifest purpose of which is to *preserve* the buildable status of certain [residential] nonconforming lots in perpetuity." *Id.* at 197. See *Adamowicz* v. *Ipswich,* 395 Mass. 757, 763 (1985), quoting from *Sturges* v. *Chilmark,* 380 Mass. 246, 261 (1980) ("Section 6 is concerned with protecting a once valid lot from being rendered unbuildable for residential purposes . . ."); *Chamseddine* v. *Zoning Bd. of Appeals of Taunton,* 70 Mass. App. Ct. 305, 308 (2007) (§ 6, fourth par., is inapplicable to commercial uses). We view *Rourke,* which interpreted the meaning of the language of limitation in § 6, fourth par., to be confined to that context.

By contrast, the nonconformity at issue here is a use, protected under § 6, first par., and subject to forfeiture under the third paragraph by reason of nonuse. Because § 6, third par., gives cities and towns the explicit authority to regulate nonconforming uses and structures which are unused (for the nonconforming purpose) for two years or more, the plain language of the statute, as well as the legislative policy underlying it, compels the conclusion that the 1983 bylaw amendment applies here.[11] Plainville Asphalt's use of the premises became nonconforming

purchase permitted building on the lot. See *Mauri,* 83 Mass. App. Ct. at 341 n.6.

[11]Plainville Asphalt's argument is that *Rourke* requires that the language in G. L. c. 40A, § 6, first par., which provides that "a zoning ordinance or bylaw shall not apply to structures or uses lawfully in existence or lawfully begun" should be read in the same way as the limitation in § 6, fourth par., that "[a]ny increase in area, frontage, width, yard, or depth requirements of a zoning ordinance or by-law shall not apply to a lot for single and two-family residential use which [inter alia] . . . conformed to then existing requirements . . . ." Even if we were to reach this question, which we need not and do not

through nonuse, and no longer enjoys the protection of either G. L. c. 40A, § 6, or the Plainville zoning bylaw.

*Judgment affirmed.*

address, the claim would not succeed. Section 6, first par., states that it applies "[e]xcept as hereinafter provided," and, even were we to accept Plainville Asphalt's reading of the first paragraph, we would read the third paragraph of § 6 to provide an explicit exception to that provision.