DiStefano *v.* Stoughton.

ALBERT N. DiSTEFANO, individually and as trustee, &
others[1] *vs.* TOWN OF STOUGHTON & others.[2]

No. 93-P-632.

Suffolk. April 15, 1994. - June 10, 1994.

Present: PERRETTA, KASS, & PORADA, JJ.

*Zoning,* Lot, Amendment of by-law or ordinance, Lot size, Exemption.
*Subdivision Control,* Zoning requirements.

A judge of the Land Court correctly determined that the "checkerboard"
conveyances of twenty-one of forty lots purporting to place ownership
so that no two adjacent lots were held in common (an effort to perpetu-
ate the nonconformity of the lots in anticipation of the expiration of the
period of immunity from more restrictive zoning amendments) were in-
effective, as all the nominal owners were under the control of a single
person, and the judge correctly entered a declaratory judgment that the
locus was subject to the more restrictive zoning by-law amendments.
[645-646]

CIVIL ACTION commenced in the Land Court Department
on June 6, 1988.

The case was heard by *Robert V. Cauchon,* J.

*David C. Johnson* for the plaintiffs.

*Judith C. Cutler* for the defendants.

KASS, J. In an effort to perpetuate the nonconformity of
forty lots laid out in a subdivison in 1967, the owner of those
lots, A & A Contracting, Inc., engaged in "checkerboard"
conveyances[3] on August 29, 1974, in anticipation of the expi-
ration of the period of immunity from more restrictive zoning

---

[1]Albert N. DiStefano is named individually and as trustee of A.N.D.
Realty Trust. The remaining plaintiffs are Anna M. DiStefano and
A & A Contracting, Inc.

[2]The board of appeals, the planning board, and the building inspector of
Stoughton.

[3]Through a series of conveyances a parcel can be divided in a checker-
board pattern such that no person named as an owner of a lot holds title to

amendments conferred by G. L. c. 40A, § 7A, as amended through St. 1965, c. 366.[4] A judge of the Land Court found that, although the checkerboard conveyances purported to place ownership so that no two adjacent lots were held in common, the nominal owners were all under the control of Albert N. DiStefano. Accordingly, the judge responded to the owners' complaint for a declaratory judgment (G. L. c. 231A) with a declaration that the locus was subject to zoning by-law amendments that the inhabitants of Stoughton had adopted in 1970. We affirm.

At the time of the approval of the definitive subdivision plan for the locus, September 15, 1967, the lot area and frontage requirements for the zoning district (Residence B) in which the locus was situated were 15,000 square feet and 100 feet. By amendments adopted in 1970, the minimum lot size was increased to 40,000 square feet and the minimum frontage to 150 feet. As laid out in the 1967 subdivision plan, the forty lots of the locus conformed to the dimensional requirements applicable in 1967. No lots have been sold from the subdivision, and, indeed, none of the site improvements laid down by the planning board in recorded covenants[5] as a precondition for the sale of lots has been constructed to date. Section 7A of c. 40A provided that the "[zoning] by-law in effect at the time of the submission of the first submitted [subdivision] plan shall govern the land shown on such approved [subdivision] plan, for a period of seven years from the date of endorsement of such approval notwithstanding any other provision of law." That statutory seven-year zoning "freeze," as it is sometimes called,[6] ended, so far as the 1967 subdivision plan was concerned, on September 14, 1974.

---

an adjacent lot. See *Wright* v. *Board of Appeals of Falmouth*, 24 Mass. App. Ct. 409, 411 n.5 (1987).

[4]The reference is to the "old" zoning enabling act added by St. 1954, c. 368, § 2. The substance of what had appeared in § 7A of the old act appears now in the fifth paragraph of § 6 of the "new" zoning enabling act inserted in the General Laws by St. 1975, c. 808, § 3.

[5]See G. L. c. 41, § 81U.

[6]See *Long* v. *Board of Appeals of Falmouth*, 32 Mass. App. Ct. 232, 235 (1992). The duration of the freeze has had a history of ups and downs, though mostly ups. It began as a three-year freeze. St. 1957, c. 297. In

Faced with what it regarded as the grim prospect of having only fifteen rather than forty lots to develop, the owner sought to avail itself of grandfather provisions in § 5A of "old" c. 40A. That section, broadly stated (i.e., without regard to certain limiting factors as to minimum size that were contained in the statute), gave perpetual life as a lawful lot for zoning purposes to a parcel that, during the period it could lawfully be built upon, was "held in ownership separate from that of adjoining land located in the same residential district." G. L. c. 40A, § 5A, as amended through St. 1961, c. 435, § 1. To that end, A & A Contracting, Inc., the record owner of all the lots in the subdivision, on August 29, 1974, sixteen days before the freeze expired, conveyed twelve lots to Albert N. DiStefano, as trustee of A.N.D. Realty Trust, five lots to Albert individually, and four lots to Anna M. DiStefano, who is Albert's wife. The remaining nineteen lots remained with A & A Contracting, Inc.

Without using the censorious word "sham," compare *Lee v. Board of Appeals of Harwich*, 11 Mass. App. Ct. 148, 151 n.4 (1981), to describe the checkerboard conveyances, the judge found that Albert continued to exercise control over all the lots in the locus after the conveyances and ruled that those conveyances secured no grandfather rights under § 5A for the locus.[7] In so doing, the judge followed *Sorenti v. Board of Appeals of Wellesley*, 345 Mass. 348, 353 (1963), and *Planning Bd. of Norwell v. Serena*, 27 Mass. App. Ct.

---

1961, the freeze increased to five years. St. 1961, c. 435, § 2. As we have seen, the 1965 legislation set the freeze at seven years. With the passage of St. 1975, c. 808, § 2, the period descended once again to five years, but in 1982 it went up to eight years. St. 1982, c. 185.

[7]The town has argued that the plaintiffs never satisfied the criterion of G. L. c. 40A, § 5A, as amended through St. 1961, c. 435, § 1, that "building on such a lot was otherwise permitted" at the time of the attempted protective conveyance. Such was the case, the town says, because the owner of the locus at the time had yet to perform any of the covenants imposed at the time of subdivision approval and there had been no application for building permits. We think, in context, the words "otherwise permitted" apply to zoning provisions and not other land use controls that might bear on the land.

689, 691 (1989), *S.C.*, 406 Mass. 1008 (1990), the latter of which observed that "[t]he crux, thus, was not the form of ownership, but control: did the landowner have it 'within his power', i.e., within his legal control, to use the adjoining land so as to avoid or reduce the nonconformity . . . ." It is a familiar principle that a landowner may not claim rights from the nonconformity of a lot if that same person owns adjoining land that would avoid the nonconformity. 27 Mass. App. Ct. at 690, and cases there cited.

It remains only to consider whether the record warranted the judge's finding that Albert DiStefano retained the master hand as to all the lots in the locus. He was the sole director and officer of A & A Contracting, Inc., according to an annual report filed with the Secretary of the Commonwealth, although he testified that he was not "positive" whether his wife Anna might have held an office as well. Of A.N.D. Realty Trust, Albert was the sole trustee and had plenary powers to make conveyancing decisions. Anna, merely by reason of her being Albert's wife, is not automatically a controlled person so far as the lots to which she received title are concerned. The judge could find, however, that her lots were, in fact, under Albert's control because the group of lots transfered to her were "sold" for a consideration of $100, i.e., nominal; there was no evidence that the $100 was ever paid; Anna acceded to Albert's control in the corporation; and Albert filed a revised subdivision plan for the locus in 1983 for all the lots in the locus, with no participation by Anna. We may disregard the shell of purportedly discrete legal persons engaged in business when there is active and pervasive control of those legal persons by the same controlling person and there is a confusing intermingling of activity among the purportedly separate legal persons while engaging in a common enterprise. *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614, 620-621 (1968). *Evans* v. *Multicon Constr. Corp.*, 30 Mass. App. Ct. 728, 732-733 (1991). The judge rightly disregarded the checkerboard conveyances, a device whose utility we have previously had occasion to question. See *Lee* v. *Board of Appeals of Harwich*, 11 Mass.

App. Ct. at 151 n.4; *Wright* v. *Board of Appeals of Falmouth*, 24 Mass. App. Ct. 409, 411 n.5 (1987).

The judgment declaring the rights of the parties is affirmed.

*So ordered.*