Rourke *v.* Rothman.

HOWARD T. ROURKE & others[1] *vs.* STUART ROTHMAN
& another.[2]

Suffolk. September 6, 2006. - January 11, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Zoning,* By-law, Exemption, Frontage, Lot size. *Statute,* Construction. *Words,*
  "Then existing requirements."

This court concluded that the "grandfather" provision of the Zoning Act,
  G. L. c. 40A, § 6, protects, under certain conditions, once-valid lots from
  being rendered unbuildable due to changes in local zoning restrictions,
  regardless of whether the change rendering the property unbuildable is
  characterized as a "repeal" of an "exemption" or a "grandfather clause";
  thus, a local zoning board of appeals correctly determined, consistent with
  statutory language and underlying policy, that a lot that was once buildable
  due to a local bylaw exemption from minimum lot size requirements
  remained buildable after the repeal of that local exemption by virtue of
  G. L. c. 40A, § 6. [193-198]

CIVIL ACTION commenced in the Land Court Department on
August 20, 2002.

The case was heard by *Alexander H. Sands,* J., on motions
for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court
granted leave to obtain further appellate review.

*Kenneth L. Kimmell* for Stuart Rothman.

*Brian S. Kaplan* for the plaintiffs.

COWIN, J. In this case we consider the meaning of the words
"then existing requirements" in a "grandfather" provision of
the Zoning Act, G. L. c. 40A, § 6. The defendant Stuart Roth-
man is the owner of a plot of land in Orleans (town), which ap-

[1]Dorothy A. Rourke; Janet Smith; Kent Turner; Barbara Turner; Samuel J.
Kearing, Jr.; Edith Dunham; Sue Miller; Gary Bissonette; Victor J. Leon; Glo-
ria Leon; and Mary O. Longsworth.

[2]Zoning board of appeals of Orleans.

pears as "Lot 12" on a 1915 town plan (locus).[3] Rothman sought to build a single-family residence on the locus, but the town building commissioner (commissioner) denied the permit on the ground that the lot did not have the minimum area and frontage required by the town's present zoning bylaws. Rothman appealed to the town's zoning board of appeals (board), which reversed the commissioner's decision and determined that the locus was buildable under the "grandfather" provision of the town's zoning bylaws, § 164-22A(1), which incorporates by reference the statutory "grandfather" provisions of G. L. c. 40A, § 6.[4,5]

The plaintiffs[6] filed suit in the Land Court, seeking to overturn the board's decision. See G. L. c. 40A, § 17. On cross motions for summary judgment, a judge in the Land Court disagreed with the board's interpretation of G. L. c. 40A, § 6, and granted the plaintiffs' motion. The Appeals Court affirmed. See *Rourke* v. *Rothman*, 64 Mass. App. Ct. 599 (2005). We granted further appellate review and now conclude that the board was correct in its determination that G. L. c. 40A, § 6, renders the locus a buildable lot.[7]

*Background.* We first set forth the applicable law. The first

[3]Rothman owns the property as managing partner of R.S. Family Limited Partnership, trustee of The 13th Priscilla Road Realty Trust.

[4]Section 164-22A(1) of the town's zoning bylaws provides:

"A lot or parcel of land in a Residential District having an area, frontage, width or depth less than that required by this section may be developed for single residential use, provided that such lot or parcel complies with the specific exemptions of [G. L. c.] 40A, § 6."

[5]General Laws c. 40A, § 6, set forth in relevant part at note 8, *infra*, sets the floor for "grandfather" protection in local zoning bylaws; it "prescribes the minimum of tolerance that must be accorded to nonconforming uses, existing buildings and structures, and the existing use of any building or structure." *Nichols* v. *Board of Zoning Appeal of Cambridge*, 26 Mass. App. Ct. 631, 632-633 (1988), quoting *Inspector of Bldgs. of Burlington* v. *Murphy*, 320 Mass. 207, 209 (1946).

[6]All the plaintiffs are abutters to the locus or abutters to abutters, or they own lots across the street. Their standing has not been challenged.

[7]In so concluding, we afford no special deference to the board's interpretation of the statute, a pure question of law, nor have we been asked to do so by any party.

sentence of G. L. c. 40A, § 6, fourth par., the portion of the statute on which the board relied in granting the permit, "exempts certain lots from increased zoning restrictions provided certain conditions are met . . . ."[8] *Adamowicz* v. *Ipswich*, 395 Mass. 757, 758 (1985). These conditions are that, "at the time of recording or endorsement," the lot (1) had at least 5,000 square feet with fifty feet of frontage, (2) "was not held in common ownership with any adjoining land," and (3) "conformed to then existing requirements." G. L. c. 40, § 6. We have interpreted the "time of recording or endorsement" to mean the time of "the most recent instrument of record prior to the effective date of the zoning change." *Adamowicz* v. *Ipswich, supra* at 762 ("the status of the lot immediately prior to the zoning change is controlling"). The parties, the Land Court, and the Appeals Court have all agreed that, for the locus, this is the time of a March, 1970, conveyance that first rendered it separately owned from other adjoining lots.[9] There is no dispute that, at that time, the locus met two of the three conditions: it had more than 5,000 square feet and fifty feet of frontage, and as a result of the March, 1970, conveyance it was no longer "held in common ownership with any adjoining land." Thus, the only dispute is whether, in March, 1970, the locus "conformed to then existing requirements."

To answer this question, an understanding of the history of the property and the town's zoning bylaws is necessary. The locus first appears on a 1915 town plan; it contains approximately 8,000 square feet and has approximately eighty feet of frontage. The town's first zoning bylaws were adopted in 1954 and provided, in § 5.1:

---

[8]The first sentence of G. L. c. 40A, § 6, fourth par., provides:

"Any increase in area, frontage, width, yard, or depth requirements of a zoning ordinance or by-law shall not apply to a lot for single and two-family residential use which at the time of recording or endorsement, whichever occurs sooner was not held in common ownership with any adjoining land, conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage."

[9]We reject the plaintiffs' suggestion, which relies on evidence outside the record and was not raised in the Land Court, that this was a sham conveyance between husband and wife that did not render the locus separately owned. See *Rourke* v. *Rothman*, 64 Mass. App. Ct. 599, 600 n.5 (2005).

> "No building . . . shall be erected in a residence district on a lot containing less than fifteen thousand square feet and having a minimum frontage of one hundred feet; provided that one building may be erected on any lot which, at the time this by-law is adopted, either is separately owned or contains five thousand square feet."

Thus, the 1954 bylaws permitted building on lots that had at least 15,000 square feet with one hundred feet of frontage, and on pre-existing lots that, at the time of the bylaws' adoption, were either separately owned or at least 5,000 square feet. Although not separately owned in 1954, the locus was buildable because it was larger than 5,000 square feet. In 1961, the bylaws were amended to increase the minimum size for new lots to 20,000 square feet with 120 feet of frontage, but they still allowed building on pre-1954 lots that, in 1954, either were separately owned or at least 5,000 square feet. Thus, as of 1961, the locus was still buildable.

The locus was held in common ownership with one or more adjoining lots until March, 1970, when it became separately owned for the first time. In May, 1970, the town amended its bylaws to allow building only on lots that had 20,000 square feet with 120 feet of frontage, or were at least 5,000 square feet *and* were separately owned in 1954. This change from "or" to "and" rendered the locus unbuildable for the first time.

In 1971, the town again amended its bylaws, eliminating entirely the language that had rendered buildable all separately owned pre-1954 lots of at least 5,000 square feet, and instead incorporating by reference the statutory "grandfather" provisions of then §§ 5A and 7A of G. L. c. 40A (now G. L. c. 40A, § 6). See St. 1975, c. 808, § 3. With alterations that are not material, this provision remains in effect as § 164-22A(1) of the town's zoning bylaws. See note 4, *supra.*

*Discussion.* There is no question that, at the relevant time, March, 1970, the locus was a buildable lot. Accordingly, the board decided, as Rothman now argues, that the locus met "then existing requirements" within the meaning of G. L. c. 40A, § 6. Nevertheless, the plaintiffs argue, and the Land Court and Appeals Court concluded, that the locus did not "conform to then existing requirements" because it was only buildable due to an

"exemption" or "grandfather clause" in the town's bylaws. We disagree with the plaintiffs and conclude that the board's interpretation is the one more faithful both to the statutory text and to the policy underlying § 6.

1. *The statutory text.* The plaintiffs acknowledge that the plain language of the first sentence of G. L. c. 40A, § 6, fourth par., grants a perpetual exemption from increased local zoning requirements to certain lots that were once buildable under local bylaws. The plaintiffs do not argue that the locus would not qualify for the statutory exemption if, for example, it had become unbuildable due to the town's change in 1961 to require a 20,000 square foot minimum lot size. Rather, the plaintiffs' argument hinges on the concept that the locus became unbuildable because of the "repeal" of a local "exemption" rather than an "increase" in a "requirement." This is a distinction without a difference. Nothing in the words "then existing requirements" suggests an arbitrary distinction between once-buildable lots based solely on the linguistic mechanism by which they became unbuildable.

The ordinary meaning of the word "requirement" is merely "something required: . . . something called for or demanded: a requisite or essential condition . . . ." Webster's Third New Int'l Dictionary 1929 (1961). This of course begs the question "required for what," and because the first sentence of § 6, fourth par., deals with exemption from regulations that govern whether a lot is buildable, the answer is "required in order for a lot to be buildable." To determine what was required for the locus to be buildable in March, 1970, we look to § 5.1 of the town zoning bylaws, then in effect, which stated:

> "No buildings . . . shall be erected in a residence district on a lot containing less than 20,000 sq. ft. and having a minimum frontage of 120 ft.; provided that one building may be erected on any lot which, at the time this by-law is adopted, either is separately owned or contains 5,000 sq. ft."

We agree with Rothman that it was the entirety of this provision that set forth the "requirements" for lots to be buildable at the time, and that it had different "requirements" for new lots, pre-

1954 lots, and separately owned pre-1954 lots. The plaintiffs contend that the provision's "requirements" consist only of what precedes the words "provided that," with the remainder being not a "requirement" but an "exemption." However, the plaintiffs ascribe talismanic significance to a purely semantic distinction. Nothing in the phrase "provided that" makes what follows it any less a "requirement" than what precedes it.[10]

The plaintiffs also argue that the statute's references to "area, frontage, width, yard, or depth requirements" necessarily limit the word "requirements" to specific dimensional minimums. However, placing the modifying phrase "area, frontage, width, yard, or depth" before "requirements" does not change our conclusion that the locus "conformed to then existing requirements." As discussed above, the town's zoning bylaws in effect in March, 1970, simply had different "area, frontage, width, yard, or depth" requirements for a lot based on whether it was in existence before the 1954 bylaws and, if so, whether it was separately owned. In March, 1970, the locus met the requirements specifically applicable to it as a pre-1954 lot.

In agreeing with the plaintiffs' interpretation of the first sentence of § 6, fourth par., the Appeals Court and the Land Court both relied on *Tsagronis* v. *Board of Appeals of Wareham*, 33 Mass. App. Ct. 55 (1992), *S.C.*, 415 Mass. 329 (1993).[11] The result in the *Tsagronis* decision, however, is entirely consistent with our interpretation of § 6. In that case, the Appeals Court rightly rejected an attempt to parlay a finite, seven-year zoning "freeze" that was permitted in a previous, superseded version of G. L. c. 40A into the permanent zoning exemption of the current § 6, fourth par. To hold otherwise would have frustrated the Legislature's intent in limiting this "freeze" to seven years. Because the lot in the *Tsagronis* case, unlike the locus here, was "never valid as a buildable lot except on a finite basis," *Tsagronis* v. *Board of Appeals of Wareham*, *supra* at 62, that decision is inapplicable.

---

[10]Nor are we persuaded by the plaintiffs' contention that the way in which the Legislature has used the words "requirement" and "exemption" elsewhere in the General Laws compels such a conclusion.

[11]On further appellate review, we disagreed with the Appeals Court's conclusion in the *Tsagronis* decision, but not as to the aspect on which the plaintiffs rely. See *Tsagronis* v. *Board of Appeals of Wareham*, 415 Mass. 329, 330 (1993).

The Appeals Court also relied on *Ferzoco* v. *Board of Appeals of Falmouth*, 29 Mass. App. Ct. 986 (1990), a decision whose reasoning we have never adopted. The *Ferzoco* court concluded that a lot which, though smaller than the town's minimum lot size, was buildable under a local "grandfather clause" did not conform to "requirements" so as to qualify for a five-year exemption from zoning under the *second* sentence of G. L. c. 40A, § 6, fourth par.[12] In so holding, the Appeals Court stated only that "[t]here was no intention [by the Legislature], we think, to pile one grandfathered period upon another . . . ." *Ferzoco* v. *Board of Appeals of Falmouth*, *supra* at 987. Because this conclusion is not compelled by the statutory text or, as discussed *infra*, by the policy underlying § 6, the *Ferzoco* decision is overruled.[13]

*2. Underlying policy.* Our interpretation of the first sentence of § 6, fourth par., comports with the legislative policy that § 6

---

[12]The second sentence of G. L. c. 40A, § 6, fourth par., which is not at issue here, creates a five-year zoning "freeze" for property that was owned commonly with other adjoining land at the time of a local zoning change, met existing zoning requirements as of January 1, 1976, and had at least 7,500 square feet and seventy-five feet of frontage. It provides:

> "Any increase in area, frontage, width, yard or depth requirement of a zoning ordinance or by-law shall not apply for a period of five years from its effective date or for five years after January first, nineteen hundred and seventy-six, whichever is later, to a lot for single and two family residential use, provided the plan for such lot was recorded or endorsed and such lot was held in common ownership with any adjoining land and conformed to the existing zoning requirements as of January first, nineteen hundred and seventy-six, and had less area, frontage, width, yard or depth requirements than the newly effective zoning requirements but contained at least seven thousand five hundred square feet of area and seventy-five feet of frontage, and provided that said five year period does not commence prior to January first, nineteen hundred and seventy-six, and provided further that the provisions of this sentence shall not apply to more than three of such adjoining lots held in common ownership."

[13]The *Ferzoco* decision purported to interpret only the second sentence of G. L. c. 40A, § 6, fourth par. See *Ferzoco* v. *Board of Appeals of Falmouth*, 29 Mass. Ct. 986, 987 (1990). However, because we are not persuaded by the contrast drawn in that case between the words "conformed to then existing requirements" in the first sentence of § 6, fourth par., and "conformed to the existing zoning requirements as of [January 1, 1976]," in the second sentence, we do not distinguish the *Ferzoco* case on this ground.

embodies: "Section 6 is concerned with protecting a once valid lot from being rendered unbuildable for residential purposes, assuming the lot meets modest minimum area . . . and frontage . . . requirements." *Adamowicz* v. *Ipswich*, 395 Mass. 757, 763 (1985), quoting *Sturges* v. *Chilmark*, 380 Mass. 246, 261 (1980). This statutory policy of keeping once-buildable lots buildable, grounded in principles of fairness to landowners, applies regardless whether the local change rendering a property unbuildable is characterized as a "repeal" of an "exemption" or a "grandfather clause." Consistent with this policy, we have construed various provisions of § 6 broadly to protect landowners' expectations of being able to build on once-valid lots.[14]

The plaintiffs contend that a competing policy favoring "eventual elimination of nonconformities," *Bransford* v. *Zoning Bd. of Appeals of Edgartown*, 444 Mass. 852, 859 (2005) (Greaney, J., concurring), demands a narrow interpretation of "requirements." While elimination of nonconformity may be a general goal of zoning, it is certainly not the goal of the first sentence of § 6, fourth par., the manifest purpose of which is to *preserve* the buildable status of certain nonconforming lots in perpetuity. *Adamowicz* v. *Ipswich, supra* at 763; *Sturges* v. *Chilmark, supra* at 261. By contrast, when the Legislature wished to create time-limited zoning exemptions to gradually reduce nonconformity, it knew well how to do so. Cf. G. L. c. 40A, § 6, fourth par., second sentence (five-year zoning freeze); G. L. c. 40A, § 6, fifth par. (seven- or eight-year zoning freeze).

---

[14]See *Marinelli* v. *Board of Appeals of Stoughton*, 440 Mass. 255, 258-261 (2003) (lot did not lose protection under second sentence of G. L. c. 40A, § 6, fourth par., merely because owner held three other adjoining lots or because it had ceased to be commonly owned); *Baldiga* v. *Board of Appeals of Uxbridge*, 395 Mass. 829, 834 (1985) (rejecting limitation of five-year zoning freeze under second sentence of G. L. c. 40A, § 6, fourth par., to lots recorded before January 1, 1976; it would cause "a substantial reduction in 'grandfather rights,' a result which is inconsistent with the general purposes of the fourth paragraph of § 6"); *Adamowicz* v. *Ipswich*, 395 Mass. 757, 762-764 (1985) (to qualify for perpetual zoning exemption under first sentence of G. L. c. 40A, § 6, fourth par., lot need only have been separately owned just before zoning change rendering it unbuildable; "[s]uch a construction furthers the purpose of § 6, which is to protect once-valid buildable residential lots"); *Sturges* v. *Chilmark*, 380 Mass. 246, 260-261 (1980) (commonly held lots that met only at single point were not "adjoining" so as to lose protection under first sentence of G. L. c. 40A, § 6, fourth par.).

Rourke *v.* Rothman.

"It is not our role to impose additional constraints on the interpretive instructions provided by the Legislature." *C.O.* v. *M.M.*, 442 Mass. 648, 652 (2004). Likewise, the plaintiffs' appeal to the need for local flexibility in zoning decisions is out of place in a discussion of § 6, which represents a decision by the Legislature specifically to *deprive* municipalities of flexibility with regard to once-buildable lots. Indeed, in this case, the board itself agreed with Rothman's broad reading of the first sentence of § 6, fourth par., thus expressly declining the flexibility which the plaintiffs claim it requires.[15]

*Conclusion.* We conclude that the locus "conformed to then existing requirements" as of March, 1970, within the meaning of the first sentence of G. L. c. 40A, § 6, fourth par. Based on our interpretation of G. L. c. 40A, § 6, the zoning board of appeals of Orleans was correct to determine that the locus was a buildable lot under § 164-22A(1) of the town's zoning bylaw. Accordingly, the judgment of the Land Court is reversed and the case is remanded. Judgment shall enter for Rothman.

*So ordered.*

---

[15]In addition, because the first sentence of § 6, fourth par., already authorizes a perpetual exemption for many once-buildable lots, our decision will have only an incremental effect on local zoning flexibility.