JEROME BERG & others[1] vs. TOWN OF LEXINGTON & others.[2]

No. 05-P-45.

Suffolk. March 21, 2006. - April 6, 2007.

Present: MILLS, DREBEN, & KATZMANN, JJ.

*Subdivision Control,* Approval of plan, Exemption, Frontage on public way, Planning board, Regulations. *Zoning,* By-law, Frontage, Special permit, Site plan approval, Lot size. *Words,* "Lot."

A Land Court judge correctly concluded that certain parcels of land were grandfathered under a town's 1999 zoning by-law as to area and frontage requirements [571-576]; however, the judge erred in annulling the town planning board's approval of a subdivision plan for those lots on the ground that the developer had failed to comply with a regulation requiring the signatures of all the persons having a fee interest in a paper street that would provide access to the parcels, given that the developer had the right to improve the street and install municipal services [576-581].

CIVIL ACTION commenced in the Land Court Department on June 8, 2000.

The case was heard by *Leon J. Lombardi,* J., on motions for summary judgment.

*Emily Sample* for the plaintiffs.

*Kenneth L. Kimmell* for David E. Burns & others.

DREBEN, J. The planning board of Lexington approved a "subdivision plan" and a "special permit with site plan review" (special permit) for the construction of residences on three

---

[1] Ruth Berg; Irving and Roberta Bosinoff; Norman and Elizabeth Newlands; Karen Pedrotti Harvey; David and Joan Robinson; Thomas and Elizabeth Stebbe; Paul and Ruth White; Eleanor Lebeau, trustee of Lebeau Family Trust; Norman and Maria Peterson; and Karen Plasse. Edward and Edith Shenrock were originally plaintiffs but were later permitted to withdraw. All of the plaintiffs had frontage for zoning purposes on streets other than the paper street.

[2] Planning board of Lexington; David E. Burns, doing business as Debco Properties; and Robert and Constance Ericson.

parcels of land on a paper street (a street shown on a plan but not built on the ground), and for the development of the street and utilities. Thereafter, the plaintiffs, some of the abutters of the parcels and others also claiming to be aggrieved persons,[3] brought this action under G. L. c. 41, § 81BB,[4] and G. L. c. 240, § 14A. They claimed that the parcels were not exempt from current dimensional zoning requirements and that approval of the subdivision plan should be annulled because the planning board exceeded its authority as the project is not a subdivision. On cross motions for summary judgment, a judge of the Land Court ruled that (1) the parcels were grandfathered under the 1999 zoning by-law as to the area and frontage requirements, and (2) while the plan was properly considered under the subdivision control law, its approval had to be annulled because the developer, David Burns, doing business as Debco Properties (Debco), failed to comply with § 2.2.4 of the planning board's development regulations by not obtaining the signatures of all the persons owning the fee of the paper street. See G. L. c. 183, § 58.

The plaintiffs appeal from the zoning ruling that the parcels were grandfathered and the treatment of the project as a subdivision. Robert and Constance Ericson, the present owners of the lots, and Debco appeal from the determination that Debco was required to obtain the signatures of all persons having a fee interest in the paper street. The municipal defendants have

---

[3]In an earlier ruling, the judge found that at least one of the plaintiffs was aggrieved and had standing. That ruling is not challenged on appeal.

[4]Originally, the defendants claimed that the zoning decision could not be challenged in this proceeding. On appeal they no longer urge that the zoning issue was improperly before the Land Court.

Zoning matters are relevant in considering a subdivision plan. The subdivision regulation of Lexington, § 3.6.1.3.1, requires that all lots shown on the subdivision plan comply with, among other things, the area and frontage requirements of the zoning by-law. See G. L. c. 41, § 81M, as inserted by St. 1953, c. 674, § 7 (powers of planning board shall be exercised, among other matters, "for insuring compliance with the applicable zoning ordinances"). See also *Beale* v. *Planning Bd. of Rockland*, 423 Mass. 690, 691 (1996) (planning board acted within its authority in disapproving plan that would violate zoning by-law); *Arrigo* v. *Planning Bd. of Franklin*, 12 Mass. App. Ct. 802, 807-808 (1981) (pointing out that neglect of planning board does not preclude building inspector or zoning board from performing statutory duties of enforcing zoning by-law and that approvals of each board serve different purposes).

not appealed. None of the parties appeals from the granting of the special permit. We affirm the determination that the lots are grandfathered as to area and frontage requirements of the zoning by-law and reverse the ruling requiring Debco to obtain the signatures of all persons having a fee interest in the paper street.

1. *Background.* The Ericsons own three noncontiguous parcels of land, each of which is an aggregation of individual lots on the paper street called Grandview Avenue, originally shown on a plan recorded in 1893. See sketch, *infra.* None of the parcels meets the minimum lot size requirement of 15,500 square feet set forth in the current Lexington zoning by-law.[5] One parcel also does not meet the current frontage requirement. Debco, through an entity controlled by Burns, executed a purchase and sale agreement to purchase the three parcels.

In order to provide access to the lots, Grandview Avenue has to be improved; it is currently a dirt trail through woods. The planning board instructed Debco that a subdivision plan is the appropriate method for obtaining approval for its project, including the construction of Grandview Avenue. We will first consider the zoning questions and then discuss the issues relating to the requirement of obtaining permission from the owners of the fee in the paper street, adding such facts from the record as are necessary to our analysis.

2. *Zoning.* As indicated earlier, none of the parcels meets the dimensional requirements of the town's current zoning by-law (minimum lot size of 15,500 square feet). The plaintiffs claim that the 1999 zoning by-law is the applicable one and that the lots are not grandfathered under its provisions. The grandfathering exemption from the area and frontage requirement is contained in § 7.4.1 of the by-law and is similar to G. L. c. 40A,

---

[5]Parcel 1 consists of two lots, 105 and 106, shown on the 1893 plan. Robert owns lot 106 individually and Constance and Robert own lot 105 as tenants by the entirety. The combined parcel contains 9,820 square feet.

Parcel 2 consists of three lots, 110, 111, and 112. Robert owns lots 110 and 112. Lot 111 is owned by Robert and Constance as tenants by the entirety. The combined parcel contains 14,245 square feet.

Parcel 3 consists of two lots of registered land as shown on an assessor's plan, which are owned by Constance and Robert as tenants by the entirety. The combined parcel contains 15,484 square feet.

§ 6, construed in *Rourke* v. *Rothman*, 448 Mass. 190 (2007).[6]
Both provisions are set out in the margin.[7]

[6]At the time of oral argument, the Supreme Judicial Court had granted an application for further appellate review of *Rourke* v. *Rothman*, 64 Mass. App. Ct. 599 (2005), a case involving zoning issues similar to those raised here. This court deferred its decision awaiting the Supreme Judicial Court's determination. We afforded the parties the opportunity to provide us with written comments on the effect of the Supreme Judicial Court's decision in *Rourke* v. *Rothman*, 448 Mass. 190 (2007), issued on January 11, 2007, on this case.

[7]In relevant part, the exemption provision of the 1999, Lexington zoning by-law states:

"*7.4 EXEMPTIONS FROM DIMENSIONAL REQUIREMENTS*

"Lesser requirements than those of Table 2 apply to certain lots. These are as follows:

"7.4.1 LOT IN SEPARATE OWNERSHIP: In any district a lot, if used for a one-family or two-family dwelling, which:

> "1) at the time of recording or endorsement, as shown by the most recent instrument of record prior to the effective date of the zoning change from which the exemption is sought, was not held in common ownership with any adjoining land,

> "2) had at least 5,000 square feet of lot area and 50 feet of lot frontage, and

> "3) conformed to the then existing requirements for minimum lot area, minimum lot frontage, minimum lot width, minimum front yard, minimum side yard and minimum rear yard,

"is not required to comply with the requirements of Table 2 for minimum lot area, minimum lot frontage, minimum lot width, minimum front yard, minimum side yard and minimum rear yard, and may be subject to the provisions of subparagraphs 7.4.1.a and 7.4.1.b below.

| a. | AREA AND FRONTAGE EXEMPTIONS | | |
|---|---|---|---|
| | Lots laid out and recorded by plan or deed | Area at least | Frontage at least |
| | Prior to March 18, 1929 | 5,000 sq. ft. | 50 ft. |
| | On or after March 18, 1929 and prior to August 8, 1938 | 7,500 sq. ft. | 75 ft. |
| | On or after August 8, 1938 and prior to December 4, 1950 | 12,500 sq. ft. | 100 ft. |
| | On or after December 4, 1950 and prior to December 1, 1953 and located in RO districts | 15,500 sq. ft. | 125 ft. |

. . . ."

The first sentence of the fourth paragraph of G. L. c. 40A, § 6, as inserted

a. *Parcels 1 and 2.* Relying on the definition of "lot" in § 2 of the by-law, the plaintiffs claim that parcels 1 and 2 do not qualify as lots. In relevant part, § 2 of the by-law defines "lot" as "[a]n area of land in one ownership with definite boundaries. . . ." Since parcel 1, an aggregation of two lots, and parcel 2, an aggregation of three lots, are areas of land held by two owners, namely Robert individually and Robert and Constance as tenants by the entirety, see note 5, *supra,* the record title is not in one ownership, and, hence, according to the plaintiffs, the parcels are not "lots."

The separate ownership of the lots in each parcel was the result of "checkerboarding," a method sometimes employed to avoid zoning provisions that require lots held in common ownership to be combined for determining area and frontage. Through a series of conveyances a parcel can be divided so that no person named as an owner of a lot holds title to an adjacent lot.[8] *DiStefano* v. *Stoughton,* 36 Mass. App. Ct. 642, 642-645 & n.3 (1994). See *Lee* v. *Board of Appeals of Harwich,* 11 Mass. App. Ct. 148, 151 n.4 (1981). Such conveyances are ineffective to defeat lot combination provisions when the lots remain in control of the originator of the scheme. *Planning Bd. of Norwell* v. *Serena,* 406 Mass. 1008, 1009 (1990). *DiStefano* v. *Stoughton, supra* at 644-645. While it may be argued that the Ericsons should be held to bear the consequences of their own acts, we consider the judge warranted in treating each of the two parcels as a single lot in common ownership. Moreover, it was Debco, the would-be developer, who applied for approval of the plan, the Ericsons indicating their agreement. The treatment of each of the parcels as a single lot is also consistent with the purpose

by St. 1975, c. 808, § 3, provides:

"Any increase in area, frontage, width, yard, or depth requirements of a zoning ordinance or by-law shall not apply to a lot for single and two-family residential use which at the time of recording or endorsement, whichever occurs sooner was not held in common ownership with any adjoining land, conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage."

[8] "Checkerboarding" was done by Robert. In 1956, he purchased, in his individual capacity, from the heirs of Catherine Gilligan lots 105, 106, 110, 111, and 112. In 1967, he transferred title to lots 105 and 111 to Michael J. Crowley for nominal consideration. Six months later, Crowley reconveyed lots 105 and 111 to Constance and Robert as tenants by the entirety.

of the rule that "adjacent lots in common ownership will normally be treated as a single lot for zoning purposes so as to minimize nonconformities with the dimensional requirements of the zoning by-law or ordinance." *Seltzer* v. *Board of Appeals of Orleans*, 24 Mass. App. Ct. 521, 522 (1987).

So treated, both parcels are grandfathered under the 1999 zoning law. In 1967, see note 8, *supra*, the time of recording of the most recent instrument of record, see *Adamowicz* v. *Ipswich*, 395 Mass. 757, 762 (1985), parcels 1 and 2 were not held in common ownership with any adjoining land, each has at least 5,000 square feet of area (as combined)[9] and fifty feet of lot frontage, and, because of the applicable grandfather clause in the zoning law in effect in 1967, conformed to the then existing requirements for minimum lot area. *Rourke* v. *Rothman*, 448 Mass. at 196-198.

The only zoning provisions of Lexington in the record prior to 1999 are portions of the 1953, 1965, and 1967 by-laws.[10] All contain a provision that the requirements as to area, frontage, and side yards "shall not apply to . . . [a]ny lot lawfully laid out and recorded by plan or deed prior to March 17, 1924."[11] Since the lots were laid out in 1893, they were buildable under the 1953, 1965, and 1967 by-laws. There was no requirement that they be held in separate ownership under those by-laws.

b. *Parcel 3.* The plaintiffs challenge the zoning conformity of parcel 3 on different grounds. They point to the title history, which shows that on the original 1893 plan, the parcel consisted of three lots that were reconfigured into two lots on a 1955 registered subdivision plan (subsequently modified), long after the Lexington zoning by-law was adopted.[12] The two lots were conveyed together in 1962 for the first time into separate ownership from adjacent lots by a deed to Robert and Constance Ericson as tenants by the entirety. Since the two lots, even when

---

[9]The defendants do not seek to build on each lot within the parcels.

[10]By not placing any earlier by-laws in the record, the plaintiffs may not argue (and they have not) that the lots were not buildable under any prior zoning law.

[11]This was the date of adoption of the first zoning by-law in Lexington.

[12]There were also mesne recorded plans showing reconfigurations. Parcel 3 and other nearby lots north of Grandview Avenue became registered land.

considered in combination, did not comply with the applicable dimensional requirements of 15,500 square feet in effect in 1955 when the subdivision was registered, and also in effect in 1962 and 1967[13] when the lots came into separate ownership, the plaintiffs argue that parcel 3 is not a buildable lot.

Contrary to the plaintiffs' contention, the lots were then protected. Under the relevant by-law in effect at the time of conveyance to the Ericsons,[14] any lot that was laid out and recorded by plan prior to March 17, 1924,

> "may be enlarged by combining it with an adjoining lot or lots, or fractions thereof, in the same ownership. Such enlarged lot shall not be subject to greater requirements as to area, frontage . . . by reason of such enlargement."

There was also no requirement until the 1999 zoning by-law that the lots be in separate ownership from adjoining lots. Thus, since the area requirements did not apply to any lot lawfully laid out and recorded by plan prior to March 17, 1924, and since those lots could be enlarged, parcel 3 was a buildable lot at the time it came into separate ownership in 1967, and complies with the grandfathering exemption (§ 7.4.1, see note 7, *supra*) of the 1999 zoning law. In 1967, parcel 3 "was not held in common ownership with any adjoining land, had at least 5000 square feet of lot area and 50 feet of frontage, and conformed to the then existing requirements . . . ," i.e., the zoning law in effect in 1967. See *Rourke* v. *Rothman*, 448 Mass. at 196-198.

3. *Access to the parcels.* In order for the parcels to be buildable, the Lexington zoning by-law requires that frontage be on a street, road, or way. Under a number of provisions of the Lexington land use laws and regulations it appears that the only method by which access to these parcels may be obtained is through a subdivision plan. More specifically, the definition of

---

[13]The plaintiffs use the 1967 date because the Ericsons, after purchasing the lots in 1962, conveyed one of the lots to Crowley. He reconveyed it back to them in 1967.

[14]The zoning by-law provisions discussed in this opinion with respect to parcel 3 are the same under the 1953, 1965, and 1967 zoning by-laws.

street, road, or way in the zoning by-law, set out in the margin,[15] lists certain classifications; the only one that would apply to the parcels at issue requires a subdivision plan. A zoning regulation, § 5.2.4, provides that if more than one new dwelling is to be built on an unaccepted street, the applicant must file a subdivision plan and provide for construction of public facilities as required by the subdivision regulations. A subdivision regulation, § 3.2.1, provides that "[n]o person shall: . . . c. undertake preliminary steps, such as the clearing of land, excavation, site preparation or other preparatory steps leading to the construction of a street . . . for which requirements or standards are set forth in these Regulations; unless and until a definitive subdivision plan has been submitted to, approved, and endorsed by the Planning Board . . . ."

Because of these provisions, as discussed in a planning board staff memo, the subdivision route was suggested to the defendants. The judge agreed, indicating that if Debco was unable to obtain an endorsement "approval not required" under G. L. c. 41, § 81P, then the plan must be considered under the subdivision rules.[16] He also found correct an assertion of the municipal defendants (who are not parties to this appeal but

---

[15]"STREET, ROAD, OR WAY: An area of land dedicated, approved by the Planning Board, or legally open for public travel under at least one of the following classifications:

"a. A public way duly laid out by the Town of Lexington, the Middlesex County Commissioners, or the Commonwealth of Massachusetts, or a way which the Lexington Town Clerk certifies is maintained by public authority and used as a public way; or

"b. A way shown on a plan theretofore approved and endorsed in accordance with the Subdivision Control Law and constructed in accordance with such plan; or

"c. A way in existence on April 4, 1948, having, in the opinion of the Planning Board, sufficient width, suitable grades and adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of the land abutting thereon or served thereby, and for the installation of municipal services to serve such land and the buildings erected or to be erected thereon.

"A public or private way as aforesaid shall not be deemed to be a 'Street' as to any lot of land that does not have rights of access to and passage over said way."

[16]He stated: "Consequently, the issue to consider is how to treat the subject

who were parties in the Land Court proceeding) that "the land submitted for subdivision approval includes the Grandview right of way, which together with the non-adjacent lots, constitutes a single tract of land." The judge then turned to the planning board's development regulations and, relying on § 2.2.4 set out in the margin[17] and the derelict fee statute, G. L. 183, § 58, determined that Debco "has failed to comply with Section 2.2.4 of the Development Regulations by not obtaining the signatures of all those persons owning the fee of private Grandview included within the Debco subdivision."

In this case we need not decide whether the Debco plan is technically a "subdivision" in order to uphold the requirements imposed by the planning board as to the construction of Grandview Avenue as a means of providing access to the parcels and for the installation of municipal services. The defendants, as owners of parcels abutting Grandview Avenue as shown on the 1893 plan, have an easement to use Grandview Avenue in its entire length. *Murphy* v. *Mart Realty of Brockton, Inc.*, 348 Mass 675, 677-678 (1965). The defendants also have the right to make the street "passable and usable for its entire width, having due regard to the rights and interests of others. . . . The right exists even more clearly [as here] where without improvement the way is impassable and useless." *Guillet* v. *Livernois*, 297 Mass. 337, 340 (1937).[18]

---

parcels under the subdivision control law where those parcels are not being divided but are situated on a paper street that has not been shown to be in existence when the subdivision control law became effective in Lexington. In spite of the language of [G. L. c. 41] § 81L defining a 'subdivision' as the 'division of a tract of land into two or more lots,' I find that where Burns is unable at present to obtain an endorsement as 'approval not required' under § 81P, then the DEBCO plan must be considered for approval under the subdivision control law and under the subdivision regulations."

[17]Section 2.2.4 of the planning board's development regulations provides in relevant part:

"*Consent of Property Owner Required for All Applications*

"When the applicant does not own the property shown in a plan filed with an application pursuant to these Regulations, the applicant shall state the nature of his or her interest in the property and the property owner shall sign the application for plan approval or endorsement. An application made by someone other than the property owner shall not be considered to be properly submitted and will not be accepted for processing unless the property owner has signed the application."

[18]These rights are not dependent on the consent of the owners of the fee in

Our cases indicate that planning boards may regulate access to lots established by subdivision plans predating acceptance of the subdivision control laws. Thus, *Toothaker* v. *Planning Bd. of Billerica*, 346 Mass. 436, 439 (1963) (*Toothaker*), held that the planning board had authority to regulate access to the lots of a 1914 plan. That case was an appeal by the planning board from a decision in the Superior Court which held that the "subdivision of the petitioners' land is not subject to the 'subdivision control law.' "[19] The plaintiffs in *Toothaker* were the owners of 1,200 lots in a subdivision of more than 1,800 lots shown on a 1914 plan. At the time the subdivision control law became effective in Billerica in 1951, about a third of the lots were exempt from the subdivision law under G. L. c. 41, § 81FF.[20] *Toothaker*, *supra* at 437. Holding that the plaintiffs' tract is "plainly, a subdivision within the meaning of § 81L," the Supreme Judicial Court ruled: "Nothing in the exceptions to that definition exempts the plaintiffs' land. Nor can it be argued that the planning board lacks power under § 81O and § 81FF to regulate access to the lots of the 1914 plan." *Id.* at 439. The court did not limit the authority of the planning board to the lots which were not exempt. Even as to the lots which were exempt under § 81FF, the court held that the planning board could apply its regulations to the rights of way appurtenant to those lots, as long as the plaintiffs and planning board applied the law so "that the existing exempt rights of way of the lots separately owned in 1951 are not destroyed or substantially limited or interfered with. . . . In any event, nothing would preclude application of regulations [to those lots] requiring construction of ways and installation of municipal services." *Id.* at 440. Viewing the exemption in § 81FF very narrowly, the court pointed to the purpose of the subdivision law set out in

the paper street, and we do not consider that § 2.2.4 of the development regulations is to be construed to apply to such rights.

[19]The building commissioner had denied permits pending compliance with the subdivision control law.

[20]As cited in *Toothaker*, *supra* at 439, "Section 81FF provides in part that the 'recording of the plan of a subdivision in the registry of deeds before the subdivision control law was in effect . . . shall not exempt the land within such subdivision from the operation of said law except with respect to lots which had been sold and were held in ownership separate from that of the remainder of the subdivision when said law went into effect . . . and *to rights of way and other easements appurtenant to such lots*' (emphasis supplied)."

G. L. c. 41M, § 81M.[21] "Except only as stated, any or every aspect of this statutory purpose may be served in applying the law to the plaintiffs' land." *Toothaker, supra* at 441.

*LeBlanc* v. *Board of Appeals of Danvers*, 32 Mass. App. Ct. 760 (1992) (*LeBlanc*), also involved a lot that had been laid out on a subdivision plan prior to the adoption of the subdivision law in Danvers and that was exempt from the subdivision control law because of G. L. c. 41, § 81FF. Citing *Toothaker, supra*, this court held that the planning board's regulations could be applied to the paper street abutting the lot. *LeBlanc, supra* at 764. We pointed out that "[t]o define frontage in c. 40A, § 6, by importing the criteria of c. 41, § 81L [the definition of subdivision], would not serve the purpose of 'protecting a once valid lot from being rendered unbuildable.' " *Ibid.*, quoting from *Sturges* v. *Chilmark*, 380 Mass. 246, 261 (1980). Accordingly, we held that where the plaintiff was willing to abide by the town's requirements as to the construction of ways and installation of municipal services, a building permit could not be denied because the paper portion of the street abutting the plaintiff's property was not yet built.

Under the principles of the *Toothaker* and *LeBlanc* cases, the planning board in the case at bar has authority to regulate access to the lots of the 1893 subdivision.[22] Thus, we need not consider whether the Debco plan would, in the absence of the 1893 plan, be within the definition of a subdivision in § 81L. Here, the defendants have the right to improve the street and are willing to comply with the standards imposed by the plan-

---

[21]That section, as amended by St. 1969, c. 884, § 2, provides in part: "The subdivision control law has been enacted for the purpose of protecting the safety, convenience and welfare of the inhabitants of the cities and towns in which it is, or may hereafter be, put in effect by regulating the laying out and construction of ways in subdivisions providing access to the several lots therein . . . . The powers of a planning board and a board of appeal under the subdivision control law shall be exercised with due regard for the provision of adequate access to all of the lots in a subdivision by ways that will be safe and convenient for travel . . . [and] for securing adequate provision for water, sewerage, drainage, [and] underground utility services."

[22]The plaintiffs and the defendants differ as to whether the parcels are exempt under § 81FF. Since we consider that the planning board in any event has authority to impose its regulations requiring "construction of ways and installation of municipal services," *Toothaker, supra* at 440, we need not decide that issue.

ning board under the local subdivision rules and regulations for such improvements. To uphold the plan insofar as it regulates the construction and the installation of municipal services is not only consistent with *Toothaker* and *LeBlanc*, but also furthers the purpose of c. 41, § 81M, see note 21, *supra*, the town's interest in proper construction of streets, and the policy, recently strongly reaffirmed in *Rourke* v. *Rothman*, 448 Mass. at 197, of protecting a once valid lot from being rendered unbuildable. To hold otherwise "would needlessly and drastically reduce the value of the [defendants' parcels] and [their] existing right[s] of way." *LeBlanc, supra* at 764.

Moreover, the specifications required by the planning board may only be challenged by the plaintiffs if the requirements were imposed without "due regard to the[ir] rights and interests." *Guillet* v. *Livernois*, 297 Mass. at 340. The plaintiffs, whose counsel attended the hearings of the planning board, have not suggested that the subdivision plan with respect to construction of the way or the installation of utilities will substantially limit or interfere with their rights in the way. See *Toothaker, supra* at 440. We note, as mentioned earlier, that neither the plaintiffs nor the defendants have appealed from the special permit, which also sets forth requirements for the construction of the street and the installation of municipal services.

In conclusion, the judgment is affirmed in so far as it adjudged that parcels 1, 2, and 3 as shown on the Debco plan comply with the dimensional and frontage requirements of the town's zoning laws; the judgment, insofar as it annulled the planning board's decision pertaining to the subdivision plan, is vacated.

*So ordered.*