The plaintiffs, William O'Connor, Jr., and Carolyn O'Connor, trustee of the 18 Hiram Pond Road Dennis Realty Trust, appeal from a Land Court summary judgment concluding that their parcel of land at 18 Hiram Pond Road in Dennis (locus) is not buildable. On appeal, they make two primary arguments: (1) by virtue of the 1979 amendment to G. L. c. 40A, § 6, fourth par., which had retroactive effect, the locus was subject to a "common-lot" exemption[4] when it became separately owned on August 3, 1977; and (2) the locus's exempt status when it became separately owned brought it into compliance with the requirements of the "single-lot" exemption contained in G. L. c. 40A, § 6, fourth par., first sentence, and thus it became buildable in perpetuity. Accordingly, they contend, summary judgment should be reversed and entered in their favor. For the reasons that follow, we affirm.
Background. First, we recite the relevant facts from the summary judgment record and provide a framework of applicable law. Decades prior to this litigation, on January 26, 1970, Carolyn O'Connor and her late husband, William O'Connor, Sr., purchased the locus. In April, 1970, the O'Connors bought the adjoining lot at 14 Hiram Pond Road (14 HPR). Both parcels were created as part of a 1916 subdivision plan and zoned for residential use. The locus is an unimproved lot with an area of 12,750 square feet and seventy-five feet of frontage. On the other hand, 14 HPR boasts a single-family dwelling built in 1940, and has a total area of 12,632 square feet. As of 1970, both lots satisfied the dimensional requirements of the local zoning by-law (pre-1973 by-law).[5]
In 1973, the town of Dennis adopted an amended by-law that made both lots dimensionally nonconforming.[6] It also eliminated the generous exemptive language contained in the pre-1973 by-law, and, instead, incorporated by reference the exemptions found in a previous version of the State zoning statute, G. L. c. 40A, § 5A.[7] Section 5A provided owners with a five-year window or "grandfather" period to build on lots held in common ownership that do not comply with increased zoning requirements, but do comply with certain minimum requirements. See G. L. c. 40A, § 5A, as amended through St. 1961, c. 435, § 1.[8] However, in 1975, before the locus's grandfather period had expired, the Legislature eliminated § 5A, and replaced it with G. L. c. 40A, § 6, fourth par. This iteration of § 6 contained an exemption for lots held in single ownership, but no exemption for lots held in common ownership. See St. 1975, c. 808, § 3. Then, in the absence of a statutory common-lot exemption, the O'Connors sold 14 HPR on August 3, 1977, rendering the locus separately owned.
After the O'Connors sold 14 HPR, the Legislature amended the language of c. 40A in 1979 and revived the common-lot exemption in the form of G. L. c. 40A, § 6, fourth par., second sentence. See St. 1979, c. 106. Under that amendment, the fourth paragraph provided, as it does today, that any increase in zoning requirements:
"shall not apply for a period of five years from its effective date or for five years after January first, nineteen hundred and seventy-six, whichever is later ... provided ... such lot was held in common ownership with any adjoining land and conformed to the existing zoning requirements as of January first, nineteen hundred and seventy six ...."[9]
Thus, lots that were (1) "held in common ownership" and (2) "conformed to the existing zoning requirements," as of January 1, 1976, benefited from a renewed five-year buildability period with a potentially retroactive start date.[10] However, despite the existence of these two finite grandfather periods for nonconforming lots, first § 5A, and later G. L. c. 40A, § 6, fourth par., second sentence, the O'Connors did not attempt to build on the locus until 2015.
Ultimately, when the plaintiffs applied to build on the locus in June, 2015, the building commissioner of Dennis denied their application finding that the locus was nonconforming and no longer benefited from "grandfathered zoning." They appealed to the zoning board of appeals (ZBA), which upheld the commissioner's decision. The plaintiffs then filed a complaint in the Land Court pursuant to G. L. c. 40A, § 17, claiming that the decision of the ZBA was arbitrary, capricious, and should be annulled. With no facts in dispute, the parties agreed that the case should be decided on summary judgment. The plaintiffs filed a motion for summary judgment. After a hearing, a Land Court judge upheld the decision of the ZBA, denied the plaintiffs' motion for summary judgment, and granted the defendants' request for entry of summary judgment in favor of the nonmoving parties.[11] This appeal ensued.
Discussion. Summary judgment is appropriate "[i]f all material facts have been established and the moving party is entitled to judgment as a matter of law." Federal Natl. Mort. Assn. v. Hendricks, 463 Mass. 635, 637 (2012). We review grants of summary judgment de novo. Miller v. Cotter, 448 Mass. 671, 676 (2007). Where, as here, the case was essentially decided on cross motions for summary judgment, "we owe no deference to the lower court's assessment of the record," Marhefka v. Zoning Bd. of Appeals of Sutton, 79 Mass. App. Ct. 515, 517 (2011), and view the facts in the light most favorable to the losing party. See DiLiddo v. Oxford St. Realty, Inc., 450 Mass. 66, 70 (2007).
Viewed in the light most favorable to the plaintiffs, the locus was not buildable in 2015 unless it then qualified for an exemption. It is undisputed that the locus is dimensionally nonconforming under the town's current zoning by-law, and that it has been undersized since 1973. The parties further agree that while the locus may have benefited from a finite exemption under the old § 5A or the new § 6, fourth par., second sentence, until 1981 at the latest, the locus was not improved during that period. Thus, in order to be built upon now, the locus must currently benefit from a different exemption.
Recognizing this, the plaintiffs contend that the locus qualifies for a perpetual exemption under the first sentence of the fourth paragraph of G. L. c. 40A, § 6. This argument consists of two principal parts: first, that the locus was buildable at the time it became separately owned in 1977 because it qualified for a common-lot exemption, under the second sentence of the fourth paragraph of § 6 ; and second, that, once it became separately owned, it qualified for the single-lot exemption, under the first sentence of the fourth paragraph of § 6, making it buildable in perpetuity. They contend that Rourke v. Rothman, 448 Mass. 190 (2007), compels this result. We disagree.
Even assuming arguendo that the locus was subject to a common-lot exemption in 1977, the plaintiffs' argument fails under the plain language of the first sentence of the fourth paragraph, among other reasons. The first sentence of the fourth paragraph of G. L. c. 40A, § 6, requires that a dimensionally nonconforming lot must satisfy each of three express conditions in order to qualify for the exemption. Specifically, it requires that, "at the time of recording or endorsement," the relevant lot (1) was "not held in common ownership with any adjoining land"; (2) "conformed to then existing requirements"; and (3) had "at least five thousand square feet of area and fifty feet of frontage." G. L. c. 40A, § 6, fourth par., first sentence. The locus fails to satisfy the first condition and, therefore, under the statute's "plain meaning," Sullivan v. Brookline, 435 Mass. 353, 360 (2001), it cannot qualify for the claimed perpetual exemption.
The plaintiffs argue that the locus satisfied these three conditions in part because it enjoyed exempt status at the time it became separately owned. However, that date is irrelevant here. Under the first sentence of paragraph four of G. L. c. 40A, § 6, we must consider the locus's status at the "time of recording or endorsement," which refers to "the most recent instrument of record prior to the effective date of the zoning change from which the exemption is sought." Adamowicz v. Ipswich, 395 Mass. 757, 764 (1985). The parties concur that "the most recent instrument of record" was the deed from April, 1970, which brought the locus into common ownership with 14 HPR. Thus, at the only relevant time for purposes of obtaining a single-lot exemption (i.e., the "time of recording"), the locus was commonly held with an adjacent lot. As a result, it fails to satisfy the first condition, and thus does not qualify for the statutory exemption.[12]
Rourke does not compel a different result. There, in contrast to the present case, the lot at issue had been transferred into separate ownership prior to the zoning change that rendered it nonconforming. Rourke, supra at 192. Thus, at the "time of recording," the lot was separately owned in compliance with the first condition. Ibid. Consequently, Rourke is factually inapposite. In an effort to overcome this discrepancy, the plaintiffs rely on the policy outlined in Rourke that § 6 should be construed "broadly" in order "to protect landowners' expectations of being able to build on once-valid lots." Id. at 197. This argument is unavailing. While Massachusetts courts have construed § 6 broadly where possible, see, e.g., Rourke, supra at 195, "the statutory language is the principal source of insight into legislative purpose." Bronstein v. Prudential Ins. Co., 390 Mass. 701, 704 (1984). Here, the statute is clear that, in order to receive single-lot protection, a parcel must not have been "held in common ownership with any adjoining land" at "the time of recording or endorsement." G. L. c. 40A, § 6, fourth par., first sentence. The locus cannot satisfy that requirement.[13]
Thus we conclude that, even if the locus benefited from an exemption when it became separately owned in 1977, it did not then gain protection under G. L. c. 40A, § 6, fourth par., first sentence. Accordingly, the Land Court judge did not err in upholding the ZBA's decision.
Judgment affirmed.

We use this term throughout to refer to the exemptive language found in G. L. c. 40A, § 6, fourth par., second sentence.

That iteration of the by-law required residential lots in zone D, where both the locus and 14 HPR were located, to have a minimum area of 10,000 square feet and seventy-five feet of frontage in order to be buildable. It also contained a "grandfather provision" exempting all lots found in preapproved subdivision plans, like the locus, from its operation.

The 1973 by-law increased the minimum lot size to 20,000 square feet and the minimum frontage to one hundred feet.

The 1973 by-law stated, inter alia, that "[a] lot that does not conform to the intensity requirements of this by-law ... shall not be built upon unless it meets the criteria of one of the exemptions contained in Section 5A or 7A, Chapter 40A, General Laws."

Section 5A delineated that "[a]ny lot lawfully laid out by plan or deed duly recorded ... which complies at the time of such recording ... may be built upon ... for a period of five years from the date of such recording" provided that, at the time increased requirements were adopted, the lot "was held in common ownership with that of adjoining land" among other criteria. G. L. c. 40A, § 5A, as amended through St. 1961, c. 435, § 1. Although this exemptive period applied from "the date of [ ] recording," we assume, as the parties do, that the locus's exempt status under this provision began when it became nonconforming in 1973.

The first two sentences of the fourth paragraph of G. L. c. 40A, § 6, provide as follows:
"Any increase in area, frontage, width, yard, or depth requirements of a zoning ordinance or by-law shall not apply to a lot for single and two-family residential use which at the time of recording or endorsement, whichever occurs sooner was not held in common ownership with any adjoining land, conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage. Any increase in area, frontage, width, yard or depth requirement of a zoning ordinance or by-law shall not apply for a period of five years from its effective date or for five years after January first, nineteen hundred and seventy-six, whichever is later, to a lot for single and two family residential use, provided the plan for such lot was recorded or endorsed and such lot was held in common ownership with any adjoining land and conformed to the existing zoning requirements as of January first, nineteen hundred and seventy-six, and had less area, frontage, width, yard or depth requirements than the newly effective zoning requirements but contained at least seven thousand five hundred square feet of area and seventy-five feet of frontage, and provided that said five year period does not commence prior to January first, nineteen hundred and seventy-six, and provided further that the provisions of this sentence shall not apply to more than three of such adjoining lots held in common ownership."

Assuming arguendo that the locus met both of these requirements, the start date of its renewed five-year grandfather period would have been January 1, 1976, because that date was later than the effective date of the relevant zoning increase in 1973. This limited period would have run until 1981 at the latest.

The defendants filed an opposition and request for entry of judgment in favor of the nonmoving party pursuant to Mass.R.Civ.P. 56(c), as amended, 365 Mass. 822 (1974).

We note that, even if the date the lots were separated could be considered the operative date, the result is the same. In Tsagronis v. Board of Appeals of Wareham, 33 Mass. App. Ct. 55, 60-62 (1992), S.C., 415 Mass. 329 (1993), this court found that a finite zoning exemption could not be extended into perpetuity by selling the locus into separate ownership during that limited grandfather period. Likewise, the plaintiffs cannot be permitted to do so in this case. "To hold otherwise" would "frustrate[ ] the Legislature's intent in limiting this freeze." Rourke v. Rothman, 448 Mass. at 195.

The plaintiffs also contend that for purposes of determining whether a "stacking" of zoning exemptions is permissible, we should look to a lot's status at the time of its creation, as opposed to its status at the time of recording. We disagree as this proposition directly contradicts the court's holding in Adamowicz v. Ipswich, 395 Mass. at 762, discussed supra.